659 F.2d 1383
 108 L.R.R.M. (BNA) 2906, 92 Lab.Cas. P 13,093
 FRANCESCO'S B., INC., a California Corporation, Plaintiff-Appellee,
v.
HOTEL AND RESTAURANT EMPLOYEES AND BARTENDERS UNION, LOCAL
28, a Labor union, and unincorporated association,
and others, Defendants-Appellants.
 No. 80-4077.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 13, 1981.
Decided Oct. 26, 1981.
 
 1
 J. Thomas Bowen, Davis, Cowell & Bowe, San Francisco, Cal., for defendants-appellants.
 
 
 2
 John E. Cantwell, Law Offices of Moore, Sizoo & Cantwell, Oakland, Cal., for plaintiff-appellee.
 
 
 3
 Appeal from the United States District Court for the Northern District of California.
 
 
 4
 Before DUNIWAY and SNEED, Circuit Judges, and KELLEHER,* District Judge.
 
 KELLEHER, District Judge:
 
 5
 Plaintiff-Appellee Francesco's B., Inc. ("the restaurant"), is a restaurant operated in Oakland, California. Defendant-Appellant Local 28 ("the Union"), represents certain employees of plaintiff. The restaurant fired one of its employees. The Union demanded his reinstatement and, when that was refused, called a strike against the restaurant. The restaurant thereupon brought this action in the District Court. The Court ordered that the matter be submitted to arbitration. The arbitrator awarded damages for breach of contract against the Union for the strike. The Union now appeals to this Court from the judgment of the District Court confirming that arbitral award. We affirm.
 
 
 6
 On July 16, 1976, the restaurant, as a member of the East Bay Restaurant Association, entered into a collective bargaining agreement with the Union. The following terms of that agreement are relevant to this action:
 
 
 7
 THIS AGREEMENT (is) made and entered into ... between the EAST BAY RESTAURANT ASSOCIATION, INC., and such other restaurants or taverns that have authorized ... the above-named Association to represent them, and any other restaurants or taverns that may become signatories to this Agreement, hereinafter referred to as the Employer, and LOCAL 28 ...
 
 
 8
 ....
 
 
 9
 SECTION 6. DISCHARGES.... In the event the Employer discharges any employee ...
 
 
 10
 Any employee who feels he has been unjustly discharged shall have the right to appeal to the Union ...
 
 
 11
 If in the opinion of the Union the discharge is unjust, an attempt shall be made by the Union with the Employer, or the respective Association, to settle the case.
 
 
 12
 In the event no settlement can be reached between the Employer or the respective Association and the Union, the Union shall be free to file a complaint with the Adjustment Board, as provided in Section 29, ...
 
 
 13
 The Adjustment Board shall have the power to make proper adjustment, financial and or reinstatement, in the event it finds that the employee has been unjustly discharged.
 
 
 14
 If a majority decision is rendered, it shall be final and binding upon both parties.
 
 
 15
 ....
 
 
 16
 SECTION 29. GRIEVANCES. All grievances between members of the East Bay Restaurant Association, Inc., and the Union, arising out of the interpretation of this Agreement shall first be taken up with the particular Employer, or his representative or with the representative of the Union, as the case may be. In the event that the matter cannot be amicably adjusted, it shall be submitted to a Board of Adjustment .... In the event that a majority of the Board of Adjustment cannot agree, either party may submit the issue in dispute to an impartial arbitrator....
 
 
 17
 ... The decision of the arbitrator shall be final and binding upon both parties.... During the period that the matter is before the Adjustment Board or is in the course of arbitration, as the case may be, there shall be no stoppage of work or other economic action taken by one party against the other. The Adjustment Board or the arbitrator shall have no authority to negotiate a new agreement, or to amend this Agreement.
 
 
 18
 At the time that this agreement was entered into, the restaurant was a member of the East Bay Restaurant Association. However, shortly thereafter, in October, 1976, it withdrew from the Association. The restaurant continued to be bound by the terms of the agreement, however.
 
 
 19
 On December 19, 1977, the restaurant fired a busboy, Joseph Mangiapane. The Union demanded that he be reinstated and threatened to call a strike if he was not reinstated. The restaurant claimed the protection of the no-strike provision of Section 29 of the Agreement. The Union responded that that Section did not protect the restaurant from strikes since it was no longer a member of the Association.
 
 
 20
 On December 27, 1977, the Union called a strike against the restaurant. On December 29, 1977, the restaurant filed its complaint in this action. The complaint invoked the District Court's jurisdiction pursuant to 29 U.S.C. § 185. It named as defendants Local 28 and various of its officers. The complaint alleged violation of the no-strike clause in Section 29 of the agreement. It sought temporary and permanent injunctive relief against the strike, as well as compensatory and punitive damages.
 
 
 21
 On December 29, 1977, Judge Poole issued a temporary restraining order directing the Union to cease the strike and to show cause on January 5, 1978, why a preliminary injunction should not be issued. On the next day, December 30, 1977, the restaurant filed an amended complaint. This complaint added the East Bay Restaurant Association as a party defendant. The restaurant sought to compel the Association to participate in Adjustment Board proceedings regarding the dispute by naming two members to that panel as required in Section 29 of the agreement.
 
 
 22
 The strike ended on December 31, 1977. The parties dispute the reason for this. The Union contends that it ended the strike because the restaurant rejoined the Association and thereby brought itself within the terms of the no-strike protection of Section 29. The restaurant contends that the strike was ended in compliance with the temporary restraining order when that order was served upon the Union.
 
 
 23
 The District Court held a hearing on January 5, 1978, on its order to show cause. Since the strike had ended, it dissolved the temporary restraining order. It then ordered that the matter proceed to arbitration.
 
 
 24
 On March 3, 1978, the matter again came before the District Court. The parties had agreed upon Sam Kagel as their arbitrator. However, there was apparently a dispute as to the scope of the arbitration. At the March 3, 1978 hearing, Judge Poole ordered that the following issues be submitted to the arbitrator:
 
 
 25
 1) To determine whether or not the provisions for arbitration of disputes and prohibition against strikes, set forth in Section 29 of the collective bargaining agreement between the parties, on file herein as Exhibit A of the complaint, are applicable to a dispute between plaintiff and defendant Union arising over plaintiff's discharge of an employee, described in the declaration of Dewey Bargiarcchi on file herein;
 
 
 26
 2) If the arbitrator's decision in the foregoing issue is in the affirmative, then to determine the merits of the dispute over plaintiff's discharge of said employee.[1]
 
 
 27
 Mr. Kagel held an arbitration hearing on May 24, 1978. In his Opinion and Award of August 21, 1978, he decided that the arbitration provision in the contract applied to disputes involving employers who are non-members of the Association when an employee discharge is disputed.
 
 
 28
 On January 19, 1979, the parties appeared before Judge Poole. At that time, he ordered them to submit the following issue to the arbitrator:
 
 
 29
 Whether or not defendant Union is liable for damages for a breach of the collective bargaining agreement in effect between defendant Union and plaintiff as a result of the strike and picketing of which plaintiff complains in its complaint on file herein, and if so, the amount of such damages for which defendant Union is liable.
 
 
 30
 A second arbitration hearing was then held. In an Opinion and Award of October 17, 1979, the arbitrator rendered the following decision:
 
 
 31
 1. The Union is liable to the Employer for a breach of the Collective Bargaining Agreement in effect between the Parties as a result of the strike and picketing of December 27, 1977 to December 31, 1977.
 
 
 32
 2. The Union is liable to the Employer for compensatory damages in the amount of $8,765.72, based upon the uncontradicted claim of the Employer for loss of food items and profits, and for the amount of $4,149.00 for legal fees and expenses resulting directly from action taken by the Employer to end the strike. The sum of $12,914.72 shall be paid forthwith by the Union to the Employer.
 
 
 33
 On November 13, 1979, the arbitrator refused to reconsider and correct his award. Thereafter, the parties filed cross-motions with the District Court to confirm or to vacate the arbitration award. At the hearing on January 21, 1980, Judge Poole granted the restaurant's motion to confirm the award and entered judgment in favor of the restaurant. The Union filed a notice of appeal in February, 1980.
 
 
 34
 The Union presents three related issues on appeal. It argues that the arbitrator exceeded his contractually-derived authority, that he ignored the clear language of Section 29 in making his award, and that his conclusions were not supported by the evidence before him.
 
 
 35
 The restaurant presents three counter-issues. It argues that the appeal of the arbitrator's powers is untimely, that the Union is barred from taking this appeal by its "consent" to the January 5, 1978 order of the court, and that the Union should be liable to the Employer for its attorneys' fees and for double costs on appeal.
 
 ANALYSIS
 
 36
 The essence of the Union's argument on appeal, around which all three of the issues turn, is that the scope of the arbitrator's authority and the nature of his decision were both in contravention of the provisions of Section 29. The Union does not directly challenge Judge Poole's order directing that the parties submit their differences to arbitration. However, that order is interrelated with the consideration of the later decisions of the arbitrator.
 
 
 37
 The dispute between the parties regarding the applicability of the no-strike clause depends upon the same considerations as the determination of whether that issue should have been decided by arbitration. Both issues turn on the interpretation of Sections 6 and 29 of the agreement. Section 29, by its terms, establishes a general mechanism for the resolution of grievances between the parties to the agreement. By its terms it refers only to disputes between employers who are members of the Association and the Union. The Union and the Association argue that Section 29 should have no application to employers such as this restaurant, that are not members of the Association. The restaurant, which was not an Association member, argues to the contrary.
 
 
 38
 Section 6 of the agreement separately provides for the handling of disputes regarding employee discharges. It refers to discharges of employees by "Employers," and thus encompasses the restaurant within its terms. The difficulty, which the arbitrator resolved in favor of the restaurant, lies in the wording of Section 6. Section 6 provides for the reference of disputes about employee discharges to an Adjustment Board "as provided in Section 29 ..." The Union's position assumes that this reference to Section 29 is only for the purpose of incorporating the procedural provisions of that section into Section 6. The restaurant's position assumes, and the arbitrator found, that the reference to Section 29 was meant to include all of the Section 29 provisions for the settlement of disputes. Thus, in the restaurant's view, this reference incorporates the procedures for the establishment and functioning of the Adjustment Board, as well as the procedures for appeal from a deadlocked Adjustment Board to an arbitrator and the prohibition against strikes during the pendency of Adjustment Board and arbitration proceedings.
 
 
 39
 The threshold question presented to the District Court was whether this dispute was arbitrable. The duty to arbitrate depends solely on the contractual agreement of the parties to settle their disputes in that manner. "(A)rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). When faced with a motion to compel arbitration, a court is required to determine whether the resisting party has, in fact, agreed by contract to submit the dispute to the arbitration process. In making this determination, the courts have followed a policy favoring a finding of arbitrability: "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." Id. (footnote omitted); Hotel and Restaurant Employees etc. v. Michelson's Food Services, Inc., 545 F.2d 1248, 1251 (9th Cir. 1976).
 
 
 40
 The difficulty in this case is that the District Judge did not decide whether the dispute was arbitrable. Rather, he ordered that the parties submit the arbitrability of the dispute to the arbitrator. The restaurant contends that this was merely the submission of a "procedural question" as that term was defined by the Supreme Court in John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964):
 
 
 41
 Once it is determined (by the Court) that the parties are obligated to submit the subject matter of a dispute to arbitration, "procedural" questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.
 
 
 42
 ... While the courts have the task of determining "substantive arbitrability," there will be cases in which arbitrability of the subject matter is unquestioned but a dispute arises over the procedures to be followed. In all such cases (decision of the procedural issue by the court) would produce ... delay ... preliminary to arbitration.
 
 
 43
 As the John Wiley opinion indicates, the duty to arbitrate is not a mere "procedural question." It is exactly the issue that the court is charged with deciding and it should not be the subject of arbitration itself. See, Local Freight Drivers, Local No. 208 v. Braswell Motor Freight Lines, Inc., 422 F.2d 109, 112 (9th Cir. 1970).[2]
 
 
 44
 This case is unusual, however. The decision of the duty to arbitrate, which the court usually makes, is interwoven here with the decision of the duty to comply with the no-strike clause, the very issue that would be submitted to the arbitrator. Thus, if the court had decided that the matter was arbitrable, it would have implied that Section 6 included all of the protections of Section 29, including both the duty to arbitrate and the duty not to strike.
 
 
 45
 The restaurant argues that the Union now may not challenge Judge Poole's order requiring the submission of the dispute to the arbitrator. The restaurant contends that an order compelling arbitration is a final and appealable order when made, Goodall-Sanford v. United Textile Workers of America, 353 U.S. 550, 551, 77 S.Ct. 920, 921, 1 L.Ed.2d 1031 (1957), and that the Union's time within which to appeal Judge Poole's order compelling arbitration expired on April 2, 1978, thirty days after Judge Poole's order. F.R.A.P. 4(a)(1). The restaurant is correct. The March 3, 1978 order is no longer appealable. However, the Union is not foreclosed from challenging the arbitrator's decision that he had jurisdiction to consider the matter. The District Court's March, 1978 order did not decide the issue of arbitrability and that issue was only presented to the Court by the later motion to vacate the arbitrator's award. Thus, this Court is faced with reviewing both whether the arbitrator decided his own jurisdiction correctly and whether he decided the merits of the breach of contract (no-strike) issue correctly. This Court is not faced with deciding whether those issues should have been referred to the arbitrator.
 
 
 46
 The scope of the court's review of decisions of an arbitrator was established by the Supreme Court in United Steelworkers of America v. Enterprise Wheel and Car Co., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960):
 
 
 47
 When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem.... Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.
 
 
 48
 However, that scope of review does not include the reexamination of the arbitrator's reasoning:
 
 
 49
 the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.
 
 
 50
 Id., 363 U.S. at 599, 80 S.Ct. at 1362.
 
 
 51
 In construing the Enterprise Wheel decision, this Circuit has consistently followed a policy of deference to the arbitrator. Thus, as the court in Holly Sugar Corp. v. Distillery, Rectifying, Wine & Allied Workers, 412 F.2d 899, 902-03 (9th Cir. 1969) stated:
 
 
 52
 if the scope of judicial review of post-award proceedings were as broad as the appellant suggests, we would be tempted to slip into the practice, so prevalent before the "Trilogy" (including the Warrior and Gulf Navigation and the Enterprise Wheel cases, supra ), of "deciding the merits in the guise of adjudicating the court-reserved issue of the scope ... of the agreement to arbitrate." (citations omitted)
 
 
 53
 Accordingly, while the courts must insure that the arbitrator's award "draws its essence from the collective bargaining agreement" and that his decision does not "manifest an infidelity to this obligation," (citation omitted), they must resist "the temptation to 'reason out' a la judges the arbiter's award to see if it passes muster." (citation omitted) Therefore, if, on its face, the award represents a plausible interpretation of the contract in the context of the parties' conduct, judicial inquiry ceases and the award must be affirmed. (citation omitted) (emphasis added)
 
 
 54
 See also, Int'l Ass'n of Machinists v. San Diego Marine Construction Corp., 620 F.2d 736, 739 (9th Cir. 1980).
 
 
 55
 Applying the law of this Circuit, it cannot be said that the determination of the issues by the arbitrator was in any way implausible. Whether or not Section 29 should be limited to members of the East Bay Restaurant Association for ordinary grievances, it is indisputable that Section 6 makes an ambiguous reference to Section 29's provisions for situations such as this. Section 6 clearly includes grievances against a non-Association employer regarding the discharge of an employee. The scope of that ambiguous reference plausibly could have been intended to give the employee and the non-Association employer the full measure of Section 29 protections in this limited circumstance. This set of protections includes both the right to binding arbitration and the protection against strikes.
 
 
 56
 The arbitrator's decision cannot be said to modify or to amend the contract. The arbitrator simply has ruled in favor of one of two plausible interpretations of the ambiguous reference in Section 6. Further, the arbitrator's decisions are entirely consistent. If the arbitrator had jurisdiction, and the no-strike clause protection applied to the restaurant, then the arbitrator had the authority to decide the breach of contract issue and to assess damages.[3]
 
 
 57
 The Union's contention that the arbitrator's decisions were not supported by the evidence before him is also unpersuasive. The language of the agreement was the primary evidence before him. The testimony of the Union's witnesses regarding the parties' intention in drafting the agreement is only one type of extrinsic evidence that the arbitrator could consider. Syufy Enterprises v. Northern Calif. State Ass'n, 631 F.2d 124, 126 (9th Cir. 1980). Moreover, in this case, both the Union and the Association, whose representatives negotiated the agreement and testified before the arbitrator about their intent in drafting Sections 6 and 29, had an interest in having the contract interpreted against this restaurant. The Union did not want to be found in breach of the agreement. The East Bay Restaurant Association also wanted Section 29 interpreted narrowly to encourage independent restaurants to join the Association, as plaintiff did the day the strike ended. Thus, the arbitrator's reliance on the terms of the agreement, rather than on this testimony, was a proper exercise of his fact-finding powers.
 
 
 58
 Finally, the restaurant argues that this appeal is frivolous in light of the Warrior and Gulf Navigation and the Wiley decisions and that it is therefore entitled to attorneys' fees and double costs pursuant to F.R.A.P. 38. This contention is without merit.
 
 CONCLUSION
 
 59
 The initial order of the District Court directing the arbitrator to determine his own jurisdiction was not challenged by a timely appeal and may not be contested now. The arbitrator's determination of his own jurisdiction, of the applicability of the no-strike clause and of the breach of contract issue, all were plausible and consistent interpretations of the collective bargaining agreement between the parties. Accordingly, the judgment of the District Court, confirming the arbitrator's award in favor of the plaintiff restaurant, is affirmed.
 
 
 60
 AFFIRMED.
 
 
 
 *
 Honorable Robert J. Kelleher, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 The arbitrator never determined the issue of the merits of the discharge of the busboy. The Union apparently never presented the issue to him for resolution, even though he indicated his willingness to decide the issue
 
 
 [2]
 The issue of whether this dispute should have been considered first by the Adjustment Board rather than being immediately arbitrated is a "procedural" matter that could have been left to the arbitrator
 
 
 [3]
 The Union has not challenged the dollar amount of the arbitrator's award before either this Court or the District Court