**Paul G. QUINN, as Trustee of The Estate of Life Imaging Corporation, formerly known as Life Instruments Corporation, a Colorado Corporation, Debtor, Plaintiff,**

v.

**CGR, a company incorporated in France, Defendant.**

No. 85–K–154.

United States District Court,
D. Colorado,
Civil Division.

April 16, 1985.

Howard J. Beck, Beck & Cassinis, Aurora, Colo., for plaintiff.

Robert H. Harry, Richard P. Holme, Davis, Graham & Stubbs, Denver, Colo., for defendant.

Paul G. Quinn, Denver, Colo., pro se.

## ORDER

KANE, District Judge.

Defendant, claiming in the alternative that the court has no jurisdiction over a French citizen, has moved for an order compelling arbitration of this matter. Plaintiff is the trustee of a liquidating and bankrupt corporation, whose attempt to reorganize under Chapter 11 did not succeed. The bankrupt formerly manufactured an ultrasound breast scanning device. The trustee has filed suit to collect money damages under a distributorship agreement entered into with defendant. Paragraph 20 of the distributorship agreement states:

20. ARBITRATION

"All disputes arising in connection with the Agreement shall be resolved by application, by either party, to the Standing Committee for the Regulation of Contractual Relations of the International Chamber of Commerce (ICC) in order that a third person who shall be appointed in accordance with the Rules and Regulation of Contractual Relations of the ICC and who shall carry out his mission in accordance with the said Rules may on the parties' behalf make a final decision which shall be binding on the parties and shall be deemed to be incorporated in the Agreement. During the pendency of any proceeding hereunder, obligations under this Agreement shall be suspended."

Since the contract is a commercial one and is between an American company and a French company, this arbitration provision is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, the text of which appears at 9 U.S.C.A. pp. 181–201, Pocket Part. Both the United States and France are parties to the Convention. Article II of the Convention reads as follows:

## ARTICLE II

1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

2. The term "agreement in writing" shall include an arbitral clause in a contract . . .

3. The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds

that the said agreement is null and void, inoperative or incapable of being performed.

Chapter 2 of Title 9 provides that this Convention shall be enforced in United States Courts (§ 201), gives the district courts original jurisdiction over the proceedings relating to the Convention regardless of the amount in controversy (§ 203), authorizes them to direct that arbitration be held in accordance with the agreement of the parties (§ 206), and to confirm arbitration awards. Chapter 2 of Title 9 also provides that the Federal Arbitration Act, 9 U.S.C. §§ 1–14 apply to the extent that there is no conflict (§ 208).

Defendant-movant contends that the existing bankruptcy involving Life Imaging Corporation should not affect the referral of this matter to arbitration, that under the Convention and the Arbitration Act arbitration is to be enforced in actions involving foreign trade and commerce even though such arbitration might conflict with certain other laws which might prevent giving effect to the arbitration of a similar domestic transaction. *Fotochrome v. Copal Co., Ltd.,* 377 F.Supp. 26, 31 (S.D.N.Y.1974), *affirmed* 517 F.2d 512 (2d Cir.1975) (public policy in favor of international arbitration is strong); *Transmarittina v. Foremost Insurance Co.,* 482 F.Supp. 110 (S.D.N.Y. 1979) (Bankruptcy Act does not deprive arbitrator of jurisdiction to render an award against bankrupt after adjudication). In further support of its motion to compel arbitration, defendant contends that the case at bar is brought merely to enforce alleged contractual rights of the bankrupt and does not involve special circumstances such as allegations of preferential transfers, or complex schemes of fraudulent brokerage transactions such as have led other courts to reject arbitration. *Allegaert v. Perot,* 548 F.2d 432 (2d Cir.1977), *cert. denied* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977). Although plaintiff contends that a bankruptcy issue may arise, namely whether CGR is entitled to an offset for monies owed by the bankrupt's estate to a CGR related company, that concededly technical issue does not present nearly the degree of complexity present in the cases in which arbitration was denied, and it presents no issues of sensitive or pressing public policy.

Plaintiff's objection to arbitration focuses on the allegation that arbitration will be more expensive than litigation. In further support of its objection to arbitration, the plaintiff cites cases in which arbitration clauses were not given effect in bankruptcy cases. I have considered the plaintiff's citations and am not convinced that the cases cited are controlling.

Plaintiff cites seven cases as authority for the proposition that the Bankruptcy Act's jurisdictional grant is sufficient to place the decision of whether to compel arbitration in the reasonable discretion of the court. Five of those cases involved debtors involved in Chapter 11 reorganization. *Zimmerman v. Continental Airlines,* 712 F.2d 55 (3rd Cir.1983), *affirming In re Ludwig Honold Manufacturing Inc.,* 22 B.R. 436 (Bkrtcy.E.D.Penn.1982); *In re F&T Contractors, Inc.,* 649 F.2d 1229 (6th Cir.1981); *In re Braniff Airways,* 33 B.R. 33 (Bkrtcy.Tex.1983); *In re Brookhaven Textiles, Inc.,* 21 B.R. 204 (Bkrtcy.S.D.N.Y. 1982); and *In re Cross Electric Co., Inc.,* 9 B.R. 408 (Bkrtcy.W.D.Va.1981). The bankrupt in the case at bar has already failed in an attempt to effect a chapter 11 reorganization. Although the plaintiff's creditor(s) are surely as interested in as prompt and inexpensive resolution of this case as though a chapter 11 attempt were ongoing, the primary goal of the Bankruptcy Act, to give debtors a fresh start, has already been defeated in this case by the proven inability of the debtor to reorganize and continue a revitalized business life. Plaintiff's last two cases cited in support of this court's discretion to deny arbitration are both inapposite: *Allegaert, supra,* (involving complex securities fraud), and *Coar v. Brown,* 29 B.R. 806 (Bkrtcy.N.D.Ill.1983) (the presence of "important federal issues" mandating a denial of the motion to compel arbitration). No such complex or weighty matters of federal law are present in this case.

Plaintiff also cites private antitrust enforcement cases, several of which I will discuss, in support of the general proposition that it is within a court's discretion to decline to order arbitration as an exception to the Federal Arbitration Act. In *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 723 F.2d 155 (1st Cir.1983), an arbitration clause was denied effect after the court weighed "... the private party's interest in the arbitration of international contract disputes against the public's interest in the preservation of economic order in the United States." The court resolved that weighing in favor of public policy favoring the determination of privately prosecuted antitrust actions in the courts. The case at bar presents no such policy considerations. Plaintiff also cites *Digital Technology, Inc. v. Continental Casualty*, 576 F.2d 116 (7th Cir.1978) in which "permeation" favored non-arbitration. The *Digital Technology* court defined permeation as arising "... if an arbitrator could not easily separate the antitrust issues from the other arbitrable issues without inquiry into the [non-arbitrable] antitrust issues." The case at bar presents no such difficulties.

Plaintiff's final argument is that CGR has, through its "default", waived any right to arbitrate. Although plaintiff graciously concedes that default is not to be inferred lightly in view of the statutory favor for arbitration, plaintiff urges that the defendant has acted so inconsistently with the right to arbitration that prejudice has resulted and the stay, therefor, the motion to compel arbitration should be denied. *N&D Fashions v. DHJ Industries*, 548 F.2d 722 (8th Cir.1977) (waiver can mean active role in lawsuit or laches); *Belke v. Merrill, Lynch*, 518 F.Supp. 602 (S.D.Fl.1981) (substantial invocation of litigation machinery creates prejudice which is the essence of waiver). The *N&D Fashions* court, *supra*, at 728, concluded vis-a-vis laches that laches is generally an issue for the arbitrator; I concur. See *Hanes Corp. v. Millard*, 531 F.2d 585, 589 (D.C. Cir.1976).

For the reasons discussed above, I grant defendant's motion to compel arbitration. The need to consider the defendant's motion to dismiss for a lack of personal jurisdiction is obviated at this time.

IT IS ORDERED:

1. That the defendant's motion to compel arbitration is granted;

2. That this case is ordered closed, to be reopened upon a showing of good cause.