**In re SEAWEST INDUSTRIES, INC., Debtor.**

**O. MUSTAD & SONS, A/S; Garanti-Instituttet for Eksportkreditt; and A/S Eksportfinans, Plaintiffs,**

v.

**SEAWEST INDUSTRIES, INC., Defendant.**

**Nos. C87–130D, C87–152D.**

United States District Court, W.D. Washington, at Seattle.

May 27, 1987.

Stuart R. Dunwoody, Davis, Wright & Jones, Seattle, Wash., for plaintiffs.

Dillon E. Jackson, Danial D. Pharris, Hatch & Leslie, Seattle, Wash., for defendant.

## MEMORANDUM ORDER

DIMMICK, District Judge.

Appellant Mustad & Sons, A/S ("Mustad") has been granted leave to appeal from an order of the Bankruptcy Court of the Western District of Washington, denying Mustad's motion for a stay of appellee Seawest Industries, Inc.'s ("Seawest") counterclaims pending arbitration of those counterclaims. The Court has considered the memoranda of the parties, the findings of fact and conclusions of law of the bankruptcy court, and relevant statutes and caselaw. On this basis, the order of the bankruptcy court denying Mustad's motion for a stay of Seawest's counterclaims and referral of those counterclaims to arbitration is hereby reversed.

This controversy began when Seawest purchased an automatic long-line fishing system from Mustad in 1980. Eight bills of exchange were executed as consideration for the purchase. The purchase and sale agreement contained a clause which provided that:

> This agreement shall be governed by Norwegian law. The seller may request arbitration if a dispute arises. In such case the arbitration court, which shall be situated in Oslo, will be established in accordance with Chapter 32 of the Norwegian Civil Procedure Code.

Seawest failed to complete payment for the fishing system. The assignee of the notes brought suit in King County Superior Court against Seawest to obtain payment. In that dispute, Seawest alleged that Mustad had breached express and implied warranties. The substantive issues were never reached and the case was dismissed by the superior court clerk for want of prosecution.

In July 1985, Seawest filed a petition for relief under Chapter 11 of the Bankruptcy Code. On December 3, 1985, Mustad filed a claim in this bankruptcy proceeding for money allegedly due it in consideration for the sale of the fishing system. In June 1986, the bankruptcy court entered an order affirming Seawest's plan of reorganization.

On July 2, 1986, Seawest filed an objection to Mustad's claim and a notice of pretrial hearing. The affirmative defenses raised by Seawest allege that Mustad delivered defective merchandise. Seawest proposed that Mustad's claim be "disallowed in total." In a stipulation signed by both parties on July 2, 1986, it was agreed that the complexity of the controversy warranted a pretrial hearing, discovery and a trial. Thus, the bankruptcy court converted Mustad's claim and Seawest's affirmative defenses into an adversarial proceeding, in an order dated August 14, 1986.

Discovery proceeded and a trial date was set. No mention of the arbitration clause in the purchase and sale agreement was made by Mustad. On December 15, 1986, Seawest moved for an order allowing joinder of their counterclaims against Mustad to the adversarial proceeding. Paragraph 8 of the document entitled "Seawest Industries, Inc.'s Counterclaims Against O. Mustad & Sons A/S", dated December 11, 1986, states that:

> Seawest has been damaged by Mustad's breaches of warranty in an amount to be proven at trial, but at least in the amount of the purchase price of the equipment and Seawest's lost profits and costs of attempted repair as well as costs of litigation and attorney's fee.

Immediately thereafter, on December 23, 1986, Mustad simultaneously moved (1) for leave to withdraw its claim in the bankruptcy proceeding, stating that it determined it had no claims against Seawest, and (2) for a stay of Seawest's counterclaims pending arbitration of those counterclaims in Norway, pursuant to the purchase and sales agreement.

In an order dated January 20, 1987, the bankruptcy court denied Mustad's motion to withdraw its claim and to stay counterclaims pending arbitration. The bankruptcy court found as matters of fact that based on the discovery and preparation of the parties and the pending trial date, it would be less costly and more time efficient to complete the trial as scheduled rather than to require the parties to arbitrate the issues in a new proceeding in Norway. The bankruptcy court further found as a matter of fact that arbitration in Norway would be prejudicial to Seawest and to Seawest's creditors due to increased costs and the time delay that would result in administration of the bankruptcy estate.

Based on these findings of fact, the bankruptcy court concluded as a matter of law that (1) Mustad waived the right to arbitration and (2) federal law justified refusal to enforce the arbitration provision in the purchase and sales agreement under the circumstances of the case.

This Court may not set aside the bankruptcy court's findings of fact unless those findings are clearly erroneous. Conclusions of law must be renewed *de novo*. Thus, this Court must consider *de novo* both the finding that Mustad has waived its

right to arbitration and the finding that federal law justifies the bankruptcy court's decision to deny enforcement of the arbitration provision.

■ Allegations that a contractual right to arbitration has been waived are not favored and any party arguing that another party has waived a contractual right to arbitration bears a heavy burden of proof. There are three elements that support a finding of waiver of a right to arbitration: (1) a party was aware of its right to arbitration, (2) acted in a manner inconsistent with the exercise of that right, and (3) prejudiced the opposing party as a result. *Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 694 (9th Cir.1986).

Presumably, Mustad knew of the arbitration provision in its purchase and sales agreement. Seawest's position with regard to Mustad's inconsistency is that once the judicial function of the court was invoked, Mustad waived the right to arbitration. It argues that Mustad did not simply file a claim and then attempt to compel arbitration, but instead participated fully in the bankruptcy and adversarial proceedings until Seawest's counterclaims were filed.

■ However, the facts do not support a finding that Mustad's actions were inconsistent with an exercise of its contractual right to arbitration. Mustad filed a claim against Seawest after Seawest declared bankruptcy. When Seawest objected to that claim and raised affirmative defenses, Mustad agreed to turn the dispute into an adversarial proceeding within the bankruptcy framework. Up until this juncture, Mustad stood to be awarded all or a portion of its claim, or at worst, the claim would be disallowed in full. Then Seawest moved to assert its affirmative defenses as counterclaims in December 1986, asking not only for disallowance of Mustad's claims but also that Mustad be found liable to Seawest for lost profits, cost of repair, litigation costs and attorney's fees. Immediately, Mustad moved to evoke its contractual right to arbitration.

There is nothing inconsistent about Mustad's actions—in fact, they were quite logical. As long as Mustad faced only disallowance of its claim it was happy to remain in bankruptcy court. When Seawest turned the tables and demanded additional recompense from Mustad in the form of lost profits, cost of repair, litigation costs and attorney's fees, Mustad was thrown on the defensive. Facing possible liability for the first time, Mustad immediately asserted its right to compel arbitration. This is not behavior that can be defined as inconsistent with exercise of Mustad's right to demand arbitration of Seawest's counterclaims.

The bankruptcy court found that prejudice would result to Seawest if the arbitration clause was enforced. Certainly all parties will be forced to expend time and resources if this dispute is arbitrated in Norway. However, if Seawest had asserted its counterclaims in July 1986, rather than waiting until December 1986, immediately prior to trial, such prejudice could have been avoided. Thus it cannot be concluded as a matter of law that Mustad waived its contractual right to request arbitration.

■ Furthermore, balancing of the policy goals of the bankruptcy code and enforcement of international arbitration agreements compels the conclusion that a refusal to enforce the arbitration provision is not justified by the circumstances of the instant case. Section 201 of 9 U.S.C., art. II(3), requires a United States court to enforce a valid arbitration provision upon request. The court is required to "refer the parties to arbitration, unless it finds the said agreement is null and void, inoperative or incapable of being performed." Section 2 of 9 U.S.C. confirms the validity, irrevocability and enforcement of agreements to arbitrate included in any maritime contract or transaction.

In *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), the Supreme Court held that an agreement to arbitrate any dispute arising out of an international commercial transaction is to be respected and enforced in accordance with the explicit provisions of the arbitration act, trumping the competing

U.S. interests in enforcement of securities laws in the federal courts. The Court noted that invalidation of the arbitration agreement would allow repudiation of a solemn promise and would

> reflect a parochial concept that all disputes must be resolved under our laws and in our courts ... we cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts.

*Id.* at 519, 94 S.Ct. at 2457, quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

On the other hand, the Bankruptcy Code of 1978 is a collection of comprehensive statutes which gives the bankruptcy court exclusive jurisdiction of certain bankruptcy matters, an option to exercise jurisdiction in all remaining matters relating to the bankruptcy case and the discretion to prohibit related acts elsewhere until resolution of the bankruptcy proceeding. The bankruptcy court exercised discretion in the instant case in denying Mustad's request for arbitration in consideration of the benefit of the estate and the creditors.

Seawest has cited cases in support of the bankruptcy court's decision to deny arbitration, including *In re F & T Contractors, Inc.*, 649 F.2d 1229, 1232 (6th Cir.1981) and *Zimmerman v. Continental Airlines, Inc.*, 712 F.2d 55 (3d Cir.1983). It cited these cases to support its proposition that the bankruptcy judge has discretion to consider the circumstances and deny the exercise of arbitration clauses in favor of efficient administration of bankruptcy proceedings. Those cases, however, are not directly on point. Most importantly, they do not address the additional consideration necessary when the parties are international actors.

Of particular importance to the instant case is the policy supporting enforcement of arbitration in the international context. *See In re Hart Ski Manufacturing Co.*, 18 B.R. 154, *modified*, 22 B.R. 763 (1982), *aff'd*, 22 B.R. 763 (1982), *aff'd*, 711 F.2d 845 (8th Cir.1983). Seawest has cited *In re Braniff Airways, Inc.*, 33 B.R. 33 (1983), where the court declined to enforce an arbitration agreement between international actors. However, the outcome of that case was based in part on a conclusion that the arbitration agreements did not contemplate that the particular issues before the bankruptcy court be arbitrated. In the instant case, however, Mustad and Seawest obviously negotiated a clause which provides that "the seller may request arbitration if a dispute arises", and specifies that arbitration is to take place in Oslo pursuant to the law of Norway. A dispute over the most integral terms of the purchase and sales agreement has arisen—whether Mustad will be paid for the equipment contracted for or whether they have breached the agreement such that they must pay damages to Seawest. It would be contrary to the express language of the agreement to deny arbitration.

Thus, the Court must rule that the facts found by the bankruptcy court do not support a finding that Mustad waived its right to arbitration as a matter of law. Furthermore, in view of the strong support the Supreme Court and the Congress have demonstrated for agreements to arbitrate, particularly in the international context, the bankruptcy court's finding that refusal to enforce the arbitration provision in the purchase and sale agreement is justified in the instant case must be reversed.

THEREFORE, the bankruptcy court's order denying Mustad's motion for a stay of Seawest's counterclaims pending arbitration is REVERSED and Mustad's request for arbitration pursuant to the arbitration provision in the purchase and sale agreement is GRANTED.

The Clerk of the Court is instructed to send a copy of this Order to all counsel of record and to the Bankruptcy Court for the Western District of Washington.