In the Matter of DOLLAR
CORPORATION,
Debtor.

The UNSECURED CREDITORS'
COMMITTEE OF DOLLAR
CORPORATION, Plaintiff,

v.

HYUNDAI MOTOR COMPANY,
Defendant.

Bankruptcy No. 88–08473–S.
Adv. No. 90–0889.

United States Bankruptcy Court,
E.D. Michigan, S.D.

Jan. 30, 1992.

Peter A. Nathan, Jacob & Weingarten, P.C., Troy, Mich., for plaintiff.

Larry K. Griffis, Jaffe, Raitt & Heuer, P.C., Detroit, Mich., for defendant.

OPINION ON MOTION OF HYUNDAI MOTOR COMPANY FOR STAY OF PROCEEDINGS PENDING ARBITRATION

WALTER SHAPERO, Bankruptcy Judge.

On November 20, 1987, Hyundai Motor Company ("Hyundai") and the debtor, Dollar Corporation ("Dollar"), entered into a contract. For the price of $2,135,000.00, Dollar agreed to supply and install floor plan assembly equipment for Hyundai's new "Excel" line of cars at Hyundai's automobile manufacturing plant in Ulsan, Korea. Article 33 of the contract provided, among other things, that any claim or dispute arising therefrom would be submitted to and settled by arbitration in Seoul, Korea in accordance with the Commercial Arbitration Rules of the Korean Association ("KCAA") under the laws of Korea. The contract also provided that it would be interpreted in accordance with Swiss law.

During the course of performance, design specifications were changed which caused alleged damages to both parties. Disputes over these changes and damages had not been resolved as of December 27, 1988, when Dollar filed a voluntary petition

under Chapter 11 of the Bankruptcy Code. On October 5, 1990, this Court issued an order granting the Unsecured Creditors' Committee ("Committee") full authority to pursue the debtor's claims against Hyundai. (That order notes, that the debtor ceased its business operations and terminated its employees on March 11, 1989 and that the debtor's estate was being liquidated.)

On November 19, 1990, the Committee filed an adversary proceeding complaint ("Complaint") against Hyundai seeking to recover $799,968.00. Count I of the Complaint is an action for breach of contract and Count II is an action for quantum meruit. On December 19, 1990, Hyundai responded to the adversary complaint by filing a Motion for Stay of Proceedings Pending Arbitration pursuant to the United States Arbitration Act 9 U.S.C. § 1 *et seq* ("Arbitration Act").

Hyundai asserts:

(1) The Arbitration Act requires the Court to enter a stay pending arbitration;

(2) The federal policy favoring arbitration applies to this case because there is no conflict with federal bankruptcy policy arguing that the breach of contract action commenced by the Committee is not a "core" proceeding involving important bankruptcy policies;

(3) Public policy requires enforcement of arbitration clauses in international contracts, even in circumstances where a conflicting national policy would dictate against arbitration if a domestic contract were involved;

(4) Trial of this dispute in this Court would impose a substantial and unbargained for burden on Hyundai arguing that arbitration will be more expeditious and less expensive than litigation;

(5) Korean arbitration awards are enforceable in the U.S.; and

(6) The Bankruptcy Court does not possess authority to place conditions on the granting of a stay.

The Committee responded to Hyundai's motion as follows:

(1) In this particular case, the Bankruptcy Code conflicts with the Arbitration Act;

(2) This Court has the discretion to deny Hyundai's motion because the stay provision of the Arbitration Act is not mandatory;

(3) The Committee's causes of action can be resolved more expeditiously by this Court than by arbitration in Korea;

(4) There is no need for the special expertise of a Korean arbitration panel;

(5) Arbitration in Korea would involve unduly burdensome costs and threaten the assets of the debtor's estate; and

(6) Creditors' rights will be adversely affected by arbitration in Korea because there is no discovery in Korean arbitrations, and debtor has no power to require its former employees to testify in Korea in order to establish its case.

■ The Arbitration Act was designed to allow parties to avoid " 'the costliness and delays of litigation'," and to place arbitration agreements " 'upon the same footing as other contracts' " *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974) quoting H.R.Rep. No. 96, 68th Cong., 1st Sess. 1, 2 (1924). The Arbitration Act is applicable to "a written provision ... in a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ..." 9 U.S.C. § 2. Section 2 of the Arbitration Act further provides that an arbitration agreement such as is involved here "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The Arbitration Act also provides (in § 3) for a stay of proceedings in a case where a court is satisfied that the issue before it is arbitrable under the agreement; § 4 of the Act directs a federal court to order parties to proceed to arbitration if there has been a "failure, neglect, or

refusal" of any party to honor an agreement to arbitrate.

The Act thus established a "liberal federal policy favoring arbitration ..." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), requiring the courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985). Bankruptcy cases have held that this duty to enforce an international arbitration agreement is not diminished nor do any conflicts arise between the Act and the Bankruptcy Code [1] when one of the parties to the contract files for relief in bankruptcy court. *In re Mor–Ben Ins. Markets Corp.*, 73 B.R. 644 (9th Cir.BAP 1987); *In re Seawest Industries, Inc.*, 73 B.R. 946 (Bankr.W.D.Wash.1987), and where as the Court has concluded and so indicated at the hearing on February 12, 1991 that the proceeding involved is not a core matter. See *In re Wood*, 825 F.2d 90 (5th Cir.1987).

■ The Supreme Court has utilized a two-step analysis to determine whether an American court should enforce an arbitration clause in an international agreement. *Mitsubishi Motors v. Soler Chrysler Plymouth*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). In *Mitsubishi*, the Supreme Court first determined whether the issues in question fell within the scope of the parties' agreement to arbitrate. The Committee commenced an adversary proceeding against Hyundai asserting breach of contract and quantum meruit claims. These issues fall within the broad scope of the arbitration clause which states that "any claim or dispute arising from this contract ..." "shall be submitted to and settled by arbitration in Seoul, Korea ..." The contractual relationship between the parties forms the basis of the claims against Hyundai. Thus, it is clear that the issues fit within the scope of the parties' agreement to arbitrate. Furthermore, any doubts about whether a dispute falls within the arbitration clause should be resolved in favor of arbitration. *Frances–Co's B., Inc. v. Hotel and Restaurant Emp.*, 659 F.2d 1383 (9th Cir.1981).

The second step in the *Mitsubishi* analysis is to determine whether the legal constraints, external to the parties' agreement to arbitrate, prohibit arbitration of the claims. Examination of the Bankruptcy Code and its legislative history reveal nothing that would prevent the arbitration panel from determining whether Hyundai has breached the agreement. Courts have held that there is no conflict between the policies of the Arbitration Act and Bankruptcy Act, and thus the former must be applied. *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3d Cir.1989); *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Thus, the fact that the issues in the proceeding arise in the context of a bankruptcy does not invalidate the clause in the agreement of the parties to have any disputes or claims submitted and settled by a panel of arbitrators in Korea.

In *Mitsubishi*, as well as in the *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) and *Scherk v. Alberto–Culver Co., supra*, the policy in which these courts rely on is one of international comity. *The Bremen* court placed great importance on respect for foreign tribunals even if this would risk a

---

1. In *Harp & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3d Cir.1989), the court relied upon the cases of *Shearson/American Exp. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), to support its holding:
... We can no longer subscribe to a hierarchy of congressional concerns that places the bankruptcy law in a position of superpriority over that Act. The message we get from these recent cases is that we must carefully determine whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing an arbitration clause and that we should enforce such a clause unless that effect would seriously jeopardize the objectives of the Code.
*Id.* at 1161.

contrary result in a domestic forum. *Mor–Ben,* 73 B.R. at 649.

> The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts ... We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts.

*The Bremen,* 407 U.S. at 9, 92 S.Ct. at 1912.

Review of bankruptcy case law demonstrates that bankruptcy courts have concluded that the reasoning of the Supreme Court in the *Mitsubishi, The Bremen,* and *Scherk* cases is fully applicable and controlling in a proceeding pending before a bankruptcy court. *Mor–Ben, supra; Seawest, supra; Harp and Co. and Societe Nationale Algerienne v. Distrigas Corp.,* 80 B.R. 606 (Bankr.D.Mass.1987).

For example, *Distrigas* involved an international contract dispute which arose in a bankruptcy court. Sonatrach, an Algerian government corporation and the debtor, a U.S. corporation entered into a contract which had an arbitration clause. Pursuant to the clause, any disputes that arose during the contract would be brought to arbitration before the International Chamber of Commerce in Geneva, Switzerland. The bankruptcy court denied Sonatrach's motion to modify the stay to allow Sonatrach to commence arbitration. On appeal, Sonatrach filed a motion to permit it to commence arbitration in Switzerland pursuant to the arbitration clause in the contract. In response to Sonatrach's motion, the debtor argued that the bankruptcy court should properly retain jurisdiction over all matters pertaining to its on-going bankruptcy proceeding. Sonatrach contended, to the contrary, that an international arbitration tribunal be allowed to determine contract damages pursuant to the arbitration provision contained in the contract.

The court stated that "the statutory interaction inherent in the current disputes presents a conflict of near polar extremes." *Id.* at 610. The policy of bankruptcy is for centralization of disputes. On the other hand, the policy of arbitration is a "decentralized approach towards dispute resolution." *Id.* at 610. The court concluded:

> When confronted with a question of this nature, the court is not assisted by the availability of any 'bright line test' or controlling precedent.... The touchstones must be balance, pragmatism and flexibility. Accordingly, any determination concerning the relative priority of conflicting federal statutes must be tailored to the facts of the individual case and, in essence, this court perceives its role as one of balancing the prospective harms and benefits inherent in favoring any given legislative policy choice with fairness to the parties in reaching the most equitable solution.

*Id.* at 610.

Even though the court recognized that numerous bankruptcy court decisions [2] held that "bankruptcy policy superseded conflicting federal statutory policies, including the pro-arbitration policy advanced under the Arbitration Act" *Id.* at 611, the court determined that these decisions are "limited to their particular facts and do not control under the present factual circumstances, especially where the dispute contains a significant international dimension." [3] *Id.* at 611.

---

2. See *Zimmerman v. Continental Airlines, Inc.,* 712 F.2d 55 (3d Cir.1983), *cert. denied* 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984); *Coar v. Brown,* 29 B.R. 806 (Bankr.N.D.Ill.1983); *In re Braniff,* 33 B.R. 33 (Bankr.N.D.Tex.1983); *Brookhaven Textiles, Inc. v. Avondale Mills, Inc.,* 21 B.R. 204 (Bankr.S.D.N.Y.1982); *Sugerman v. Rouse construction, Inc. (In re Technical Industries, Inc.),* 21 B.R. 863 (Bankr.M.D.Tenn.1982); *Cross Electric Company, Inc. v. John Driggs Company, Inc.,* 9 B.R. 408 (Bankr.W.D.Va.1981).

3. The *Distrigas* court, 80 B.R. at 613, noted that "although the Supreme Court has not specifically addressed the clash of bankruptcy and international arbitration, it would be unrealistic indeed to argue that bankruptcy principles are qualitatively more fundamental to our capitalistic democratic system."

The court in *Distrigas*, citing *Quinn v. CGR*, 48 B.R. 367 (Bankr.D.Colo.1985), held that the two most important factors which distinguish it from the cases cited in the footnote are (1) the international character of the transaction and (2) the presence of a failed Chapter 11 debtor. *Id.* at 611.

Application of these factors to the instant situation presents a response from this Court identical to that rendered by the Court in *Distrigas*. The debtor in the case at bar has failed in an attempt to effect a Chapter 11 reorganization and it has liquidated. Therefore, "the Bankruptcy Code's major policy goal of providing the debtor with an opportunity to rehabilitate has been 'defeated ... by the proven inability of the debtor to reorganize and continue a revitalized business life'." *Distrigas* at 612 citing *Quinn* at 369. In addition to the factors mentioned above, the court in *Distrigas* held:

> The court could not identify any significant bankruptcy or public policy issues present within the dispute over contract damages, stating that international arbitration is indicated especially when no 'complex or weighty matters of federal law are present.'

*Id.* at 612 citing *Quinn* at 369.

The *Quinn* and *Distrigas* situations are similar to the instant case where only the breach of contract cause of action will be submitted to arbitration. Review of the adversary complaint indicates that the cause of action does not contain any bankruptcy issues, public policy issues or complex federal law matters. The court in *Distrigas* noted that "while international arbitration will require a temporary and limited incursion into the bankruptcy court's exclusive jurisdictional bailiwick, no bankruptcy policies will suffer adverse impact." *Id.* at 614.

In similar fashion, the Supreme Court in *Scherk*, 41 U.S. at 519, 94 S.Ct. at 2457, held that the parties must respect an international arbitration agreement because invalidation of the arbitration clause of the agreement would not only allow the respondent "to repudiate its solemn promise," but lead to the creation of "a legal no-man's land" that would have an undeniably chilling effect upon international commerce. *Id.* at 517, 94 S.Ct. at 2456. The court concluded:

> A parochial refusal by the courts of one country to enforce an international arbitration agreement would not only frustrate [the orderliness and predictability essential to any international business transactions, as well as other purposes] but would invite unseemly and mutually destructive jockeying by the parties to secure tactical litigation advantages.

*Id.* at 516–17, 94 S.Ct. at 2456.

Therefore, in accordance with the case law discussed above, the bankruptcy court should not retain jurisdiction over this action and the parties should abide by the arbitration clause in the contract.

■ The Court's decision to stay proceedings pending arbitration would be the same even if the Court adopted the alternate argument advanced by the Committee.

The Committee asserts that in the bankruptcy forum, the Arbitration Act does not mandate a stay of proceedings pending arbitration. The Committee claims that case law concludes that bankruptcy proceedings in the federal judicial system conflict with the provisions of the Arbitration Act, and therefore, the decision of whether to stay proceedings pending arbitration is within the sound discretion of the bankruptcy court.[4]

The Committee puts forth a standard utilized by Courts in cases involving *domestic* arbitration. Those courts recognize four (4) factors to be considered in determining whether to exercise discretion to stay the proceedings pending arbitration. They include:

(1) Whether the issue can be resolved more expeditiously by the bankruptcy judge than by the arbitration process;

---

**4.** See *Zimmerman v. Continental Airlines, Inc.,* 712 F.2d 55 (3d Cir.1983), *cert. denied* in 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984).

(2) Whether or not special expertise is necessary in deciding the issue;

(3) Whether arbitration threatens the assets of the estate; and

(4) The impact on creditors of the debtor who were never parties to the agreement containing the arbitration clause.[5]

Hyundai presented two expert witnesses at the evidentiary hearing on April 25, 1991: Professor Andreas F. Lowenfeld of New York University Law School and Professor Sang Hyun Song of Seoul National University Law School. These experts in international and Korean Arbitration addressed each of the four issues raised in the Plaintiff's brief in support of its objection to Defendant's motion and the Court's Order of February 13, 1991. The Committee did not present any evidence to refute the testimony of Hyundai's two witnesses or undermine the witnesses' testimony during cross examination. Therefore, in rendering the decision in this Opinion with respect to this aspect of the issue presented, this Court has given substantial weight to the testimony provided by Hyundai's witnesses. At the evidentiary hearing, those witnesses provided several reasons why arbitration would be more expeditious than litigation. The strongest one is that no appeals on the merits of an arbitration award are permitted. In contrast, if this Court rules against arbitration and the matter was to be litigated before this Court, Hyundai's counsel asserts in its post-hearing brief that "the appeals would begin almost immediately." Hyundai could exercise its right to appeal that decision to the United States District Court for the Eastern District of Michigan, and possibly, to the Sixth Circuit Court of Appeals.[6] This issue may even be subject to Supreme Court review given the importance of the issue of international arbitration in a bankruptcy context and the fact that the Supreme Court has yet to address this issue in that context. These appeals could delay trial or arbitration of this case for a couple of years.

On the other hand, a decision by this Court referring this matter to arbitration is not appealable. See footnote 6. Nor is the arbitration award itself. Once the award is entered, which Professors Lowenfeld and Song predict could be within six to nine months from commencement of the arbitration, the dispute would be finally resolved, with no possibility of appeal. If the dispute is successfully conciliated, the time frame would be substantially less. Professor Song testified that in 1987 about 800 cases were filed with the Korean Arbitration Board. Almost 608 of these cases were settled by conciliations and mediation. Hearing tr. at 86–88. Song further testified that given the case is not a big, complex case or a legally complicated case, conciliation is very possible. Hearing tr. at 88.

Another reason that arbitration would be more expeditious than litigation can be found in Hyundai's Proposed Terms and Conditions of Korean Arbitration in this case.

In the first paragraph of the proposed terms and conditions ("proposal"), Hyundai indicates it is willing to invoke procedures under Article 18 of the Korean Commercial Arbitration Board ("KCAB") Rules, which provide for conciliation of disputes prior to the actual beginning of the arbitration. As stated previously in this Opinion, testimony indicates that the conciliation procedure has been extremely successful in Korea. Further, the result of the conciliation would have the same force and effect as an arbitration award and could be enforced in the United States Courts. Hearing tr. at 84.

The second paragraph of the proposal deals with the subject of arbitrator selec-

---

5. See *In re F & T Contractors, Inc.,* 649 F.2d 1229 (6th Cir.1981) and *In re Chas. P. Young Co.,* 111 B.R. 410 (Bankr.S.D.N.Y.1990).

6. Section 16 of the U.S. Arbitration Act permits interlocutory appeals when the trial court denies a motion to have a matter referred to arbitration. This is a one-way appeal right. If the Court should stay these proceedings and refer this matter to arbitration, that interlocutory decision could not be appealed by the plaintiff. 9 U.S.C. § 16(a)(1)(B) (1988 and Supp.1991).

tion. The debtor has the option at the commencement of the arbitration proceeding to have the arbitrator be a national of a country other than Korea or the United States, that is mutually acceptable to both parties or selected by the Secretariat of the KCAB. The other option available to the debtor is to have the dispute resolved by a panel of three (3) arbitrators. Each party could select one arbitrator and the third arbitrator must be a national of a country other than Korea or the United States and could be selected by both parties or by the Secretariat of the KCAB.

In addition, if the matter proceeds to arbitration, Hyundai's proposal provides for expedited procedures. Paragraph three of the proposal provides that the parties are entitled to discovery "if good cause has been shown ..." and discovery is limited "to that necessary to avoid undue prejudice ..." The paragraph further states that "discovery shall be conducted in accordance with the procedures prescribed by the arbitrator consistent with the expeditious resolution of the dispute at the lowest possible cost to the parties." Since the Federal Rules of Civil Procedure and/or Bankruptcy Rules do not provide such limitation on discovery, the terms Hyundai intends to invoke could significantly quicken the pace of the arbitration proceeding and compel both parties to use their best efforts to expedite resolution of the dispute.

Hyundai's expert witnesses also testified that arbitration, unlike litigation in this Court, is not subject to delay caused by attempts to schedule hearings on what is clearly a crowded court calendar. Arbitration can proceed on a schedule determined by the arbitrator(s) and the parties. Hearing tr. at 41. Also, the fact that people are required to come to the arbitration site from different parts of the world, results in more pressure directed toward settlement. Hearing tr. at 60.

The second factor to consider in exercising discretion in regard to a stay of this proceeding pending arbitration is the extent to which the special expertise of an arbitration panel is necessary to resolve the dispute. The dispute between the parties involves a breach of contract as a result of design changes. The testimony of the expert witnesses leads this Court to the conclusion that this dispute would be best resolved by a panel consisting of one or more expert arbitrators. Hearing tr. p. 47. An arbitrator who is more knowledgeable in the areas of construction contracts and equipment design, etc. would be more expert than the bankruptcy court in assessing the standard and practices in the industry as well as the technical aspects of the materials and labor provided, and the issues presented.

The third factor to consider is whether arbitration threatens the assets of the estate. At the evidentiary hearing, Hyundai's expert witnesses testified that arbitration would cost approximately the same amount as litigating the matter before this Court. Hearing tr. at 42–44. The administrative costs associated with the arbitrator are minimal. Professor Song testified that the administrative fee for Korean arbitrations is $2,050, plus 0.25% of any amount over $200,000. Hearing tr. at 89–90. Thus, even if the plaintiff files a claim for $800,000, the administrative fee would be $3,500.

The payments due to the arbitrators are also relatively small. In Korea, each arbitrator is paid 300,000 Korean Won or approximately $410 U.S. Dollars upon the completion of the arbitration. Hearing tr. at 89. The costs of the parties are by far the most significant expenses in both litigation or arbitration. It seems likely for the reasons stated above, the arbitration would be more expeditious than litigation, and that (or thus) the attorney fees will be lower—resulting in the costs of arbitration being less than if the matter were litigated. In addition, the attorney fees attributed to discovery will be substantially less because the arbitration rules limit discovery to the essential documents or testimony necessary to resolve the dispute. Hearing tr. at 38–40.

The Committee, in its post-hearing brief (p. 5), provides an estimate reflecting approximate expenses in the amount of $26,-564.00 associated with arbitration of this

matter in Korea. However, paragraph 5 of Hyundai's Proposed Terms and Conditions states that Hyundai agrees, if the Committee so elects, to shift the costs of arbitration to the losing party. Therefore, if the Committee is confident that its claim is valid, it has the opportunity to collect not only what is determined to be owed on that claim, but to shift the burden of its costs of arbitration to Hyundai. Hearing tr. at 44. This type of option would not be available to the Committee if this matter were to proceed to litigation before this Court.

The fourth factor for the Court to consider is the potential impact on creditors who were not parties to the arbitration agreement. The Court recognizes that a major function of bankruptcy proceedings is to protect general creditors. *In re F & T Contractors, Inc.,* 649 F.2d 1229 (6th Cir. 1981). However, the testimony provided by Hyundai's expert witnesses and Hyundai's willingness to expedite resolution of the dispute (exhibited by Hyundai's Proposed Terms and Conditions of Korean Arbitration) leads this Court to the conclusion that arbitration in Korea will not adversely affect the interests of the creditors.

Analysis of the indicated four factors leads this Court to the conclusion that the Court's discretion, if it is a matter of discretion, should properly be exercised by requiring that the parties abide by the arbitration clause in the contract, and that the arbitration be conducted on the basis suggested by Hyundai.

In a letter dated April 26, 1991, the Court asked the parties to address in their briefs as to whether the Court had the authority, if the matter is referred to arbitration, to require the parties to accept the arbitration provisions proposed by Hyundai and/or any other terms and conditions that the Court may propose. The Court has found no authority to support the proposition that this Court possesses authority to dictate to the parties the terms under which the arbitration is to occur (though it does feel empowered to incorporate in its order what Hyundai has suggested to the extent it is not inconsistent with the arbitration clause itself). However, this Court may retain

jurisdiction to monitor this case and to enforce any arbitration award. See *Delta Computer v. Samsung Semiconductor,* 879 F.2d 662, 663 (9th Cir.1989).

For the reasons indicated, Hyundai Motor Company's Motion for Stay of Proceedings pending arbitration is granted and it shall present to the Court an appropriate order consistent with this conclusion.