**In the Matter of FOTOCHROME, INC., Debtor.**

**No. 70 B 209.**

United States District Court, E. D. New York.

June 4, 1974.

See also, 346 F.Supp. 958.

---

Louis P. Rosenberg, Brooklyn, N. Y., for debtor.

Dugald Campbell Brown, William M. Kahn, John H. Pinto, Jr., Gillard S. Glover, New York City (Whitman & Ransom, New York City, of counsel) for claimant.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

The litigants have joined issue where the laws of bankruptcy, foreign arbitration, jurisdiction and judgment recognition overlap. Although the result is troubling, for the reasons indicated below we hold that, in the circumstances of this case, pending foreign arbitration proceedings are not subject to stays by a bankruptcy judge. We recognize that this holding may prefer foreign to American creditors in a limited class of cases.

### I. FACTS

Fotochrome, Inc., a New York corporation, fell into dispute with Copal Co., Ltd.—a Japanese corporation apparently neither present nor doing business in the United States—over the terms of an agreement to manufacture special cameras in Japan. Copal sought damages of $631,528.07 for Fotochrome's failure to

pay; Fotochrome claimed $930,000.00 for defective cameras.

Under a provision in their contract, the parties proceeded to arbitration before the Commercial Arbitration Association in Tokyo, Japan. All the evidence was presented in thirteen days of hearings, both parties being represented by local counsel.

On March 26th, 1970, while the parties were awaiting issuance of an award by the Arbitration Association, Fotochrome filed a Chaper XI arrangement in the Eastern District of New York. The bankruptcy judge issued the usual order the next day continuing the debtor in possession and staying all proceedings by creditors, including pending arbitrations, under the authority of section 11(a) of the Bankruptcy Act. 11 U.S.C.A. § 29(a). He ruled:

"That until the further order of this Court, *all creditors* of the debtor, including their agents, servants and employees and any Marshal of the City of New York and Sheriff of the State of New York, acting in their behalf or in the furtherance of their claims, be and they *are hereby restrained* and enjoined *from* commencing or *continuing any* actions, suits, *arbitrations*, or the enforcement of any claim in any Court against this debtor or taking any further steps or proceedings except before this Court." (Emphasis added.)

After certified copies of this order were delivered to Copal and the Commercial Arbitration Association in Japan, Fotochrome "withdrew" from the arbitral proceedings.

Undaunted, the Arbitration Association published its decision in favor of Copal on September 18, 1970. It awarded damages in the sum of $624,457.80 with interest and divided costs between the parties. Copal entered judgment on its award in Japan and filed a proof of claim here in the Eastern District of New York. It never entered judgment on the award in an American court on the theory that it was constrained in this country by the stay of March, 1970.

Upon the strength of the stay, the bankruptcy judge refused to recognize the finality of the arbitral award to Copal and ruled that he had power to rehear the issues of liability *de novo*. This appeal followed.

## II. JURISDICTION OF THE BANKRUPTCY COURT

It is not surprising that the Japan Commercial Arbitration Association made its award despite the bankruptcy court order. Our courts were bereft of any basis to exercise *in personam* jurisdiction over Copal—much less the Arbitration Association—in this case until after proceedings in Japan had terminated and Copal filed its claim here.

Section 2(a) of the Bankruptcy Act (11 U.S.C. § 11(a)) codifies a fundamental rule for all American courts requiring some basis of jurisdiction over the person of the party the court seeks to bind. The provision reads:

"The Courts of the United States hereinbefore defined as courts of bankruptcy are hereby created courts of bankruptcy and are hereby invested, *within their respective territorial limits* as now established or as they may be hereafter changed with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this title . . ., to . . . (15) Make such orders, issue such process . . . as may be necessary for the enforcement of the provisions of this title . . .." 11 U.S.C. § 11(a)(15). (Emphasis added.)

■ By providing, under section 311 of the Bankruptcy Act (11 U.S.C. § 711), that the court in which a bankruptcy petition is filed shall have "exclusive jurisdiction of the debtor and his property, wherever located", Congress indicated that a Chapter XI court would have the power to send its process beyond the boundaries of its district to protect its jurisdiction. See Continental Illinois National Bank & Trust Co. v.

Chicago, R. I. & P. Ry. Co., et al., 294 U.S. 648, 682–684, 55 S.Ct. 595, 609, 79 L.Ed. 1110 (1935) (construing the predecessor statute § 77; civil process "in any other district") ; see also In re Greyling Realty Corp., 74 F.2d 734, 737–738 (2d Cir.), cert. denied sub. nom Troutman v. Compton, 294 U.S. 725, 55 S. Ct. 639, 79 L.Ed. 1256 (1935) ; 8 Collier on Bankruptcy, 3.03 at 183–188 (14th ed. 1971). But no authority has construed that power to extend beyond the territorial limits of the United States to control the action of parties and tribunals without some independent basis of jurisdiction over them. *Cf.* Advisory Committee's Notes to Bankruptcy Rule 111, eff. October 1, 1973.

▮▮▮▮ The Chapter XI Court, though graced with nationwide jurisdiction, is still bound in extranational matters by the well established "minimum contacts" principle enunciated in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). There the Supreme Court held:

> "However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him."
> 357 U.S. at 251, 78 S.Ct. at 1238, 2 L.Ed.2d at 1296.

See, also, Mariash v. Morrill, et al., 496 F.2d 1138, 1141–1143 (2d Cir. 1974) ; Leasco Data Processing Equipment Corp. v. Maxwell, 468 F.2d 1326, 1339–1342 n. 11 (2d Cir. 1972) (minimal contacts principle applied to extraterritorial service upon foreign defendants under the Securities Exchange Act of 1934). Here, neither the Japanese corporation nor the Japanese Arbitration Association had, so far as this record shows, the minimal contacts essential to the exercise of jurisdiction by the bankruptcy judge.

## III. RECOGNITION OF THE ARBITRAL AWARD

Under Japanese law the award to Copal is final. Federal Rule of Civil Procedure 44.1 and N.Y.C.P.L.R. 4511 permit judicial notice of those Articles of the Japanese Code of Civil Procedure providing for deposits of arbitral awards in Japanese courts.

> "Article 799: An award shall contain an entry of the day, month, and year when it was drawn up and arbitrators shall sign and seal thereon.
>
> "2. An exemplification of the award bearing the signatures and seals of the arbitrators shall be served upon the parties and the original thereof shall be deposited with the jurisdictional court together with a certificate of service."

Once the award is deposited with the Japanese court, it is subject to no further confirmation proceedings. At that point, under Article 800, the effect of the award is conclusive.

> "Article 800: An (arbitral) award shall have the same effect as a judgment which is final and conclusive between the parties."

Copal was unable to confirm its award as a judgment in our courts in the face of the Referee's order which apparently barred any further action against the bankrupt in this country. The Japanese Corporation now asks that it be allowed to enforce its Japanese award in this country so that it will be a provable debt for the purposes of bankruptcy court proceedings. Bankruptcy Act § 63(a)(5), 11 U.S.C. § 103(a)(5).

In support of its right to enforcement, Copal invokes two treaties, one bilateral, the other multilateral, to which both the United States and Japan are parties. The bilateral treaty at least has been held to be self-executing. See Oregon-Pacific Forest Products Corp. v. Welsh Panel Co., 248 F.Supp. 903, 910 (D.C.Oregon 1965) (state law must yield to arbitration provisions of treaty with Japan) ; L. Henkin, Foreign Affairs and the Constitution, 157 n. (1972). Under the Treaty with Japan on Friendship, Commerce and Navigation, conclusive Japanese arbitration awards which do

not violate our public policy are conclusive in this country as well.

> "Awards duly rendered pursuant to any such contracts, which are *final and enforceable under the laws of the place where rendered, shall be deemed conclusive* in enforcement proceedings brought before the courts of competent jurisdiction of either Party, and shall be entitled to be declared enforceable by either such courts, except where found contrary to public policy." Treaty with Japan on Friendship, Commerce and Navigation, Art. IV, para. 2, 4 U.S.T. 2063 at 2068, T.I.A.S. 2863 at 7 (April 2, 1953). (Emphasis added.)

Recognition of such foreign arbitral awards are mandated under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards. They are treated much like a judgment under the Full Faith and Credit Clause of the United States Constitution.

> "Each Contracting State *shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon,* under the conditions laid down in the following articles. There shall not be imposed substantially more onerous conditions or higher fees or charges on the recognition or enforcement of the arbitral awards to which this Convention applies than are imposed on the recognition or enforcement of domestic arbitral awards." United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Art. III, 21 U.S.T. 2517 at 2519, T.I.A.S. 6997 at 3, 330 U.N.T.S. 38 at 40 (Dec. 29, 1970). (Emphasis added.)

The United States acceded to the United Nations Convention more than four years after the contract here in question was signed and shortly after the award was made. Nevertheless, it is likely that the treaty controls enforcement actions commenced after the effective date of the Convention, even if the foreign proceedings and award predated the Convention.

> "One important point is that the convention contains no prospective language and, therefore, should be construed as applying retroactively to arbitration agreements and awards previously existing." Quigley, Convention on Foreign Arbitral Awards, 58 A.B.A.J. 821, 822 (1972).

See, also, Haight, Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Summary Analysis of Record of U. N. Conference, May/June 1958, p. 85; Aksen, American Arbitration Accession Arrives in the Age of Aquarius: United States Implements United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 3 Sw.U.L.Rev. 1, 25 (1971); McMahon, Implemention of the UN Convention on Foreign Arbitral Awards in the U. S., 26 Arb.J. (n. s.) 65, 85 (1971); *cf., e. g.,* Island Territory of Curacao v. Solitron Devices, Inc., 489 F.2d 1313 (2d Cir. 1973) (confirming foreign arbitration award).

The two treaties compel us to grant the same finality to the award in our court as it has been allowed in Japanese courts. Since Copal's award has attained finality in Japan, we must accord it the opportunity to attain finality here in the United States.

It may seem curious that an arbitral award from a foreign land should be accorded more respect than its American counterpart. Had Fotochrome been involved in American arbitration proceedings, the Referee's order, we assume for the purposes of this case, would have halted the proceedings or at least prevented the confirmation of the award as a final judgment. In the Matter of Fotochrome, Inc., Bankruptcy Judge's Decision p. 13. The anomaly can be explained by the force of the Supremacy Clause of the Constitution. A treaty, under that clause, is the "supreme" law of the land.

It is an expression of the sovereign will speaking with the same authority as a statute.

"By the constitution, laws made in pursuance thereof, and treaties made under the authority of the United States, are both declared to be the supreme law of the land, and no paramount authority is given to one over the other . . . . If the treaty operates by its own force, and relates to a subject within the power of congress, it can be deemed in that particular only the equivalent of a legislative act . . . . In either case, the last expression of the sovereign will must control." The Chinese Exclusion Case, 130 U.S. 581, 600, 9 S.Ct. 623, 627–628, 32 L.Ed. 1068 (1889).

See also, e. g., Hauenstein v. Lynham, 100 U.S. 483, 25 L.Ed. 628 (1879); Whitney v. Robertson, 124 U.S. 190, 8 S.Ct. 456, 31 L.Ed. 386 (1888); Cook v. United States, 288 U.S. 102, 53 S.Ct. 305, 77 L.Ed. 641 (1933) (treaty superseding statute);. Henkin, Foreign Affairs and the Constitution, 163–64 (1972). Cf. United States v. Toscanino, 500 F.2d 267, 278–279 (2d Cir. 1974) (common law yields to treaty). Here the 1953 Treaty with Japan and the 1970 United Nations Convention have superseded in small measure the 1938 Bankruptcy law.

It is important to note that even if the framers of the Constitution had failed to include the word "treaty" in the Supremacy Clause, the provisions of the United Nations Convention would still be a part of our law and binding upon this court. After being ratified by the Senate, the treaty was implemented as a statute and codified in 9 U.S.C. §§ 201–208 (1970).

"The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter."
9 U.S.C. § 201.

See, in general, Comment, International Commercial Arbitration Under the United Nations Convention and the Amended Federal Arbitration Statute, 47 Wash.L. R. 441 (1972); McMahon, Implementation of the UN Convention on Foreign Arbitral Awards in the U. S., 26 Arb.J. (n. s.) 65 (1971).

This case is not without irony. The treaties force us to remove the factor of alienage in determining the recognition of arbitral awards; an award is to be no less final for its Japanese origins. But, in terms of injunctive power the common law factor of alienage remains. It is because the Referee had no jurisdictional authority to enjoin Copal, a Japanese corporation, or the Japan Commercial Arbitration Association in a foreign land that the award became final and binding under Japanese law and therefore entitled to be final and binding under our own. Copal thus benefits both from the treaties' removal of alienage and from the common law's insistence upon it.

We recognize that this result might somewhat disturb the draftsmen of the Bankruptcy Act. Upon a petition for bankruptcy they would have expected the court to summon all the creditors of the bankrupt to press their claims at one time and place. However, we cannot say that the result does not have some support in policy. Given the hazards of international trade—such as currency fluctuations and governmental shifts—some stability of expectation in the resolution of disputes through arbitration to protect against the uncertainties of foreign litigation seems desirable. Support for this policy comes from many quarters including the American Bar Association, the American Arbitration Association and the United States Council of the International Chamber of Commerce. See, e. g., Comment, United Nations Foreign Arbitral Awards Convention: United States Accession, 2 Cal.West.Intl.L.J. 67, 70 n. 15 (1971). Furthermore, the implementing legislation in 9 U.S.C. §§ 201–208 (1970) indicates that the Government of the United States has committed itself to the settlement of international commercial disputes through

voluntary arbitration. See McMahon, Implementation of the UN Convention on Foreign Arbitral Awards in the U. S., 26 Arb.J. (n. s.) 65, 85 (1971).

International trade is so important to our economy and to the peace and welfare of the world that our law is justified in assuaging other nations' suspicions by the firm enforcement of treaties we find applicable. American corporations facing imminently unfavorable arbitrations abroad may not file for Chapter XI arrangements here to avoid final and binding arbitral judgment abroad.

Fotochrome bargained for its contract with Copal and one of the terms bargained for was a provision for arbitration of disputes in Japan. Fotochrome can only be relieved of its contractual burden at the expense of certainty in international commerce. As the Supreme Court recently noted:

> "The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts."

M/S Bremen, et al. v. Zapata Off-Shore Co., 407 U.S. 1, 9, 92 S.Ct. 1907, 1912, 32 L.Ed.2d 513 (1972).

International commerce has grown too large and the world too small for American courts to disregard the law of nations, even in favor of the Bankruptcy Act.

## IV. CONFIRMATION OF THE AWARD

■ The arbitral award is entitled to confirmation proceedings where it will be tested under rules designed to assure fairness to the American litigant. The standards for recognizing foreign awards as final under federal law are set forth in Article V of the United Nations Convention (9 U.S.C. § 207 (1970)) in terms much like those used in testing domestic arbitral awards. They read as follows:

> "1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

> (a) The parties to the agreement referred to in Article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the law of the country where the arbitration took place; or

> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

> 2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

> (a) The subject matter of the difference is not capable of settlement by

arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country."

United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Art. V, 21 U.S. T. 2517 at 2520, T.I.A.S. 6997 at 4, 330 U.N.T.S. 38 at 40, 42.

Since the arbitral award has attained the status of a judgment in Japan, it also may be recognized pursuant to New York's statute on recognition of foreign country money judgments. N.Y.C.P.L. R. §§ 5301–5309 (1970). *Cf., e. g.,* Island Territory of Curacao v. Solitron Devices, Inc., 489 F.2d 1313, 1319 (2d Cir. 1973). But. *cf.* 9 U.S.C. § 205 (removal from state court of action relating to convention). New York's C. P.L.R. 5304 sets out the grounds for non-recognition in terms designed to ensure due process:

"(a) ·No recognition. A foreign country judgment is not conclusive if:

1. the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law;

2. the foreign court did not have personal jurisdiction over the defendant.

(b) Other grounds for non-recognition. A foreign country judgment need not be recognized if:

1. the foreign court did not have jurisdiction over the subject matter;

2. the defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend;

3. the judgment was obtained by fraud;

4. the cause of action on which the judgment is based is repugnant to the public policy of this state;

5. the judgment conflicts with another final and conclusive judgment;

6. the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court; or

7. in the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action." See, *e. g.,* B. Kulzer, Study, The Uniform Foreign Money-Judgments Recognition Act, N.Y.Jud.Conf. 13th Ann.Rep. 194, 210–218 (1968).

Long before these treaties and statutes were enacted American courts had begun to recognize foreign arbitral awards as well as foreign judgments on a regular basis, subject of course to considerations of fairness and public policy. The leading case of Hilton v. Guyot, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895), stated the standards of recognition of foreign judgments eighty years ago:

"[T]here has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the ˝citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it is sitting, or fraud in procuring the judgment . . . ." 159 U.S. at 202, 16 S.Ct. at 158, 40 L.Ed. at 122.

See Smit, International Res Judicata and Collateral Estoppel in the United States, 9 U.C.L.A.L.Rev. 44, 46–47 (1962). The standards for recognition of arbitral awards under the treaties and statutes are almost a codification of the principles used to protect American litigants from recognition of unfairly obtained foreign judgments and arbitral awards in the past. Compare Restatement Second Conflict of Laws §§ 98

**34**

(foreign judgments), 220 (foreign arbitral awards) (1971).

Copal is now free to seek recognition of its award as an American judgment. Fotochrome may prove grounds for non-recognition. If Copal emerges as the victor, issues in the underlying dispute will be *res judicata* and the amount awarded will be a provable debt for the purposes of the Bankruptcy Act.

### V. CONCLUSION

While our decision upholds the international obligations of the United States, it may place American creditors at a disadvantage. The difficulty arises from unresolved inconsistencies between treaty law and preexisting national law. House Report No. 91–1181, 1970 U.S. Code, Cong. and Admin.News 3601 ("American delegation felt that certain provisions were in conflict with some of our domestic laws."); Comment, United Nations Foreign Arbitral Awards Convention: United States Accession, 2 Calif.West.Int.L.J. 67, 70 (1971). Here we find that the treaties take precedence. The decision of the bankruptcy judge is reversed.

So ordered.