SOUTHWEST MARINE OF SAMOA, Inc., Plaintiff

v.

S & S CONTRACTING, Inc., Defendant

High Court of American Samoa
Trial Division

CA No. 8-87

July 28, 1987

Before REES, Chief Justice, VAIVAO, Associate Judge, and AFUOLA, Associate Judge.

Counsel: For Plaintiff, Talalelei A. Tulafono

On motion for reconsideration:

Plaintiff argues that we erred in holding the automatic stay provision of the federal Bankruptcy Act, 11 U.S.C. § 362(a), binding on the High Court of American Samoa.

Plaintiff, Southwest Marine, is an American Samoa corporation. Defendant S & S Contracting is a foreign corporation doing business in American Samoa. In January of this year Southwest Marine sued S & S for damages and other relief in connection with an alleged breach of contract. S & S did not answer and Southwest Marine moved for a default judgment. On March 18, just before the hearing on that motion, the Clerk of the High Court received a document from a Honolulu attorney for S & S. It was entitled, in pertinent part, "NOTICE OF FILING. OF VOLUNTARY PETITION UNDER CHAPTER 11 AND OPERATION OF STAY."

The default hearing was continued at the request of counsel for Southwest Marine. At the continuation of the hearing the Court expressed the opinion that the federal bankruptcy statute required a stay of this proceeding, but granted a further continuance so that counsel could assemble authorities for the contrary proposition. After a complicated series of informal discussions, more or less amounting to a ruling that the stay provision does apply, Southwest Marine filed this motion for reconsideration.[1]

---

[1]    On June 9 counsel filed a memorandum arguing that the automatic stay provision does not apply to the High Court of American Samoa, and also moved for an expedited hearing (on June 10) on his' motion for default judgment. The motion for expedited hearing was informally denied first by the Associate Justice and then by the Chief Justice. Counsel construed the second refusal to hold an expedited hearing (which was based in part on the Chief Justice's failure to be convinced by counsel's memorandum that the stay

-72-

11 U.S.C. 8 362 provides that a petition filed under Chapter 11 of the Bankruptcy Act "operates as a stay, applicable to all entities, of . . . the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor . . . ." In Rainwater v. The Sea Encounter, 3 A.S.R.2d 87 (1986), we held that an action in the High Court of American Samoa is a "judicial, administrative, or other action or proceeding" within the meaning of this provision. Plaintiff urges us to overrule that decision on several grounds:

(1) that "although informal, the practice of the High Court has been to the contrary of what the court is now appearing to believe";

(2) that American Samoa is outside "the judicial jurisdiction of the United States";

(3) that other provisions of the bankruptcy laws of the United States do not extend to American Samoa; and

(4) that "to require plaintiff to go to Hawaii and adjudicate its claims against S & S is inherently unfair."

I. Stare Decisis

Before addressing plaintiff's arguments on the merits we should consider whether we are bound either by our prior holding in The Sea Encounter, supra, in which we decided the precise question that is now before us, or by the contrary informal practice claimed by plaintiff.

According to the rule of stare decisis a decision of this court, even a decision of the Trial Division that was not appealed, should be followed by judges deciding subsequent cases in the

provision does not apply) as an "order denying further proceeding on defendant's motion for Default Judgment." He then filed this "Motion for New Trial or Reconsideration." At the hearing on the motion the Court agreed to regard the previous events as a denial of Southwest Marine's motion for default judgment so that this motion for reconsideration could be taken under advisement on its merits.

-73-

Trial Division unless there is some compelling reason not to follow it: That the judge in the later case would have decided the earlier case differently is presumably not a "compelling reason." We do not, however, feel very strongly bound by our decision in _The Sea Encounter_, for the following reasons: (1) the decision was made at the conclusion of a summary proceeding without the benefit of full briefing and argument by counsel; (2) the risk that the reflection and deliberation the earlier judge brought to bear on the issue will be casually disregarded is quite low, since the Justice who decided _The Sea Encounter_ is also the author of the present opinion; (3) counsel argues that _The Sea Encounter_ itself departed from precedent without explanation or analysis; and (4) in cases involving statutory or constitutional interpretation the court's primary responsibility is to apply the enacted law faithfully; the duty to follow judicial precedent is accordingly weaker than in common law cases in which judge-made rules are themselves "the law."

For the same reasons, we do not regard the "informal practice of the High Court" prior to _The Sea Encounter_ to be conclusive of this case. Indeed, we are still unsure about whether there was any such practice. As nearly as the Court can determine, it consisted primarily of one unreported case in which attorneys for the debtor argued that the bankruptcy stay did apply here, attorneys for the creditor argued that it did not, and Chief Justice Gardner avoided reaching the issue by granting a stay on the ground of _forum non conveniens_. Since the result was consistent with the proposition that the bankruptcy stay applies here and also with the proposition that it does not, it cannot be cited as authority for either proposition.

At the default hearing counsel also alluded to a case in which he himself had represented an American Samoan corporation that was the subject of Chapter 11 proceedings in Hawaii, and in which a civil action in the High Court had been allowed to proceed. Since we allowed the continuance partly in order for counsel to refresh his memory about that case, and since he does not cite it in his

memorandum, we assume the question was not decided in that case either.[2]

---

[2] At oral argument on this motion for reconsideration, counsel called the Court's attention to a very recent case in which the High Court did proceed to judgment despite informal notice of a bankruptcy petition. Development Bank v. Siofele, CA No. 10-86 (unreported case decided from the bench June 17, 1987). That case was decided on its most unusual facts: (1) A few minutes before the first scheduled hearing on a motion for default judgment, the Clerk of the High Court was notified by the defendant that he had filed for bankruptcy. (2) The Court announced this at the hearing and continued the matter indefinitely for the reasons we express in this opinion. (3) The attorney for the plaintiff subsequently learned that the defendant's bankruptcy petition had been dismissed (it was not clear whether voluntarily or involuntarily) shortly after it was filed. (4) Another hearing was scheduled on the motion for default judgment, and notice was sent to the defendant. (5) The defendant wrote from California to request a continuance on the ground that he was studying for the bar examination. (6) The Court denied the continuance, concluding that if the defendant had not filed a frivolous or meritless bankruptcy petition he would have had plenty of time to litigate his case and then study for the bar. (7) The day before the second hearing, defendant called the judge from California and told him he had filed another bankruptcy petition "to keep this case from going to trial." The implication was that the second petition would also be dismissed as soon as it had served its immediate purpose. The Court told the defendant, and later announced at the default hearing, that the vexatious filing of multiple frivolous actions was outside the scope of the bankruptcy laws and therefore of the automatic stay provision. The Court also relied on the fact that it had no credible evidence before it that a second petition had in fact been filed. Finally, the Court made it clear that it would regard itself as bound by any contrary order of the California bankruptcy court. The case is clearly distinguishable from this one.

-75-

There is, of course, no case in which it is not possible to argue that stability and predictability require adherence to precedent; the aforementioned circumstances suggest, however, that the law on this point may fairly be regarded as unsettled. Moreover, the question whether a court has assumed jurisdiction it does not have is one of those which it is not so important to have settled as to have settled right. We therefore proceed to the merits of plaintiff's arguments.

## II. "The Judicial Jurisdiction of the United States

Plaintiff directs our attention to the definitional section of the Bankruptcy Act, which defines "'United States,' when used in a geographical sense" to include "all locations where the judicial jurisdiction of the United States extends, including territories and possessions of the United States." 11 U.S.C. § 101(49). Plaintiff then states that American Samoa is outside the judicial jurisdiction of the United States.

Plaintiff does not tell us why this might be. The statute tells us that when it uses the term "United States" in a "geographical sense" it means all locations within United States judicial jurisdiction, but the latter term is itself nowhere defined. The only thing we are told about the "judicial jurisdiction of the United States" is that it "includ[es] territories and possessions," a datum that cannot be regarded as terribly helpful to the plaintiff's case. Yet plaintiff's memorandum treats the assertion that American Samoa, although a "territory or possession," is outside the judicial jurisdiction of the United States as self-evident.

It is possible (although certainly not self-evident) that the cited language could denote some but not all territories and possessions. Neither the statute nor the plaintiff, however, suggests any basis on which we might conclude that American Samoa is excluded. There is, of course, no "Article III court" in this territory or in any other; territorial courts are established by Congress pursuant to the general legislative powers granted by Article I of the Constitution and the power granted by Article IV to make rules and regulations for the territories. American Insurance Co. v. Canter, 26 U.S. (1 Pet.) 511 (1828). This argument, however, proves too much,

-76-

for the section makes it clear that at least some territories are to be regarded as within "the judicial jurisdiction of the United States."

One might try to distinguish American Samoa from the other territories on the ground that it is the only territory which is not within the jurisdiction of any federal <u>district</u> court. (The other territories have courts which, although established pursuant to Article I and/or Article IV, are called "district courts" and have essentially the same jurisdiction as United States District Courts established under Article III.) The statutory definition does not, however, limit itself to places where there are federal district courts. In the absence of any such limitation there is no reason to suppose that any territory into which the writ of <u>any</u> court of the United States extends is without the judicial jurisdiction of the United States.

The only court physically located in this Territory is the High Court of American Samoa. The High Court was established pursuant to authority granted the President of the United States by a law of the United States.[3] The commissions hanging on the walls in the chambers of the Justices purport to issue under the authority of the United States. The High Court exercises judicial power that can be divested only by an Act of Congress.[4]

---

[3] 48 U.S.C. § 1661(c) provides:

Until Congress shall provide for the government of such islands, all civil, judicial and military powers shall be vested in such person or persons and shall be exercised in such manner as the President of the United States shall direct.

<u>See also</u> Exec. Order No. 10264, 3 C.F.R. at 765 (delegating executive authority over American Samoa to the Secretary of the Interior); Rev. Const'n of Am. Samoa, Preamble (approval by the Secretary of the Interior of the territorial constitution); <u>id</u>. art. III § 1 ("[T]he judicial power shall be vested in the High Court of American Samoa).

[4] <u>See</u> 48 U.S.C. § 1662a (section added in 1984) (providing that the territorial constitution can be amended only by an Act of

We need not decide, however, whether the existence of the High Court would be sufficient to put American Samoa within the judicial jurisdiction of the United States; for it is quite clear that Article III courts can and do exercise judicial power here.

In King v. Morton, 520 F.2d 1140 (D.C. Cir. 1975), the United States Court of Appeals for the District of Columbia Circuit exercised judicial power in the territory by means of a writ directed to the Secretary of the Interior. The court did not discount the possibility of a more direct exercise of federal judicial power, by writ of certiorari or other writ of review from the United States Supreme Court to the High Court of American Samoa. Id. at 1143-44 n.3; see U.S. Const. art. III § 2 ("The judicial power shall extend to all Cases, in Law and Equity, arising under . . . the Laws of the United States . . . . In all [such] Cases . . . the supreme court shall have appellate

Congress). The territorial constitution provides that "the judicial power" in American Samoa shall be exercised by the High Court. Rev. Const'n of Am. Samoa, art. III § 1, quoted in note 3 supra.

After the enactment of § 1662a in 1984, under which the High Court exercises its "judicial power" at the pleasure of Congress rather than of the territorial legislature or the Secretary of the Interior, it would seem clear that the territory is within "the judicial jurisdiction of the United States" even without resort to the possibility of extraterritorial judicial review. But even if --- as might be inferred from King v. Morton, 520 F.2d 1140 (D.C. Cir. 1975), discussed in the text infra --- the High Court originally had no real "judicial power" but was a mere administrative tribunal reporting to the Secretary of the Interior and reversible at his will, and even if this status has somehow survived the 1984 statute, the High Court would still seem to be bound by the bankruptcy stay provision., The provision expressly applies not only to "judicial proceedings" but also to "administrative proceedings" and "other proceedings." 11 U.S.C. § 362(a). The Department of the Interior is certainly within the judicial jurisdiction of the United States, and by its terms § 362 would apply to the administrative tribunals of the Department.

-78-

jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make."); <u>Durousseau v. United States</u>, 10 U.S. (6 Cranch) 307 (1810) (Supreme Court may review decisions of a territorial court).[5]

---

[5] <u>Durousseau</u> has often been cited for its strong affirmation, in dictum, of the proposition that when Congress has not expressly granted appellate jurisdiction to the Supreme Court it should be presumed to have exercised its power to make an exception to the Court's jurisdiction. <u>See id</u>., 10 U.S. (6 Cranch) at 313-14. It is important to note, however, that this observation rested on what the Court took to be the intent of the Judiciary Act of 1789, as manifested in the structure of that Act: "they have described affirmatively [the Court's appellate] jurisdiction, and this affirmative description has been understood to imply a negative on the exercise of such appellate power as is not comprehended within it." <u>Id</u>. at 314. The courts of American Samoa, on the other hand, were created pursuant to general power given the executive in a statute outside the parts of the United States Code dealing with the jurisdiction of courts. See authorities cited in note 3 and 4 <u>supra</u>. It would therefore be unrealistic to infer any intention on the part of Congress to make an implicit exception to what would otherwise be the jurisdiction of the United States Supreme Court. Indeed, there would be a certain tension between such an implied exception and the precise holding of <u>Durousseau</u>, which was that (despite the general presumption stated above) the appellate jurisdiction of the United States Supreme Court over the decisions of the court for the "District of Orleans" was implied although not expressed by the statute defining that court's original jurisdiction. <u>Id</u>. at 317. The Court had this to say in support of its holding:

The constitution here becomes all important. The constitution and the laws must be construed together. It is to be recollected that the appellate powers of the Supreme Court are defined in the constitution, subject to such exceptions as Congress may make. Congress has not expressly made any exceptions; but they

-79-

There is nothing new or paradoxical about the proposition that the "judicial jurisdiction of the United States" can extend into a territory not because a federal court of first instance sits there but because a court in Washington, D.C., has power to review judicial or other decisions taken there. The Constitution leaves it up to Congress whether there are to be any federal courts at all other than the Supreme Court. U.S. Constitution art. III; see generally C. Wright, Handbook on the Law of Federal Courts § 1. No one argues, however, that if Congress had established no inferior tribunals the judicial jurisdiction of the United States would include only Washington, D.C., and not Maryland or Kansas. See Martin v. Hunter's Lessee, 14 U.S. (1 Wheat.) 304 (1816).[6]

Jurisdiction is the right to wield power. For us to declare American Samoa to be without the judicial jurisdiction of the United States would

are implied from the intent manifested by the affirmative description of its powers. It would be repugnant to every principle of sound construction to imply an exception against the intent.

Id. at 318 (per Marshall, C.J.).

[6] The unhelpfulness of this line of argument is compounded by the absence of any link between § 101(49) (the section discussed above, defining "United States") and § 362 (the automatic stay provision). Although the definitional section tells us what is meant when the statute refers to the United States, the automatic stay provision does not refer to the United States. The effect of a § 362 stay is nowhere expressly limited to the United States, in a geographical sense or any other sense. As it happens, the automatic stay provision is ineffective outside the judicial jurisdiction of the United States unless the bankruptcy court acquires personal jurisdiction over the parties to the foreign proceeding; but this is because United States courts have no power to assert such jurisdiction, not because of any limitation contained in the statute. From what can be discerned from the statute itself, in other words, an automatic stay applies anywhere Congress has the power to make it apply. See Part III infra.

entail the assertion that there is no court of the United States, including the United States Supreme Court, whose order we would be bound to obey. We do not believe this to be true.

### III. The Reach of the Bankruptcy Act

Intertwined with plaintiff's general argument that American Samoa is outside the jurisdiction of the United States is a narrower argument that the automatic stay provision of 11 U.S.C. § 362 should be construed not to apply in American Samoa because certain other provisions of the bankruptcy laws do not apply here.

Plaintiff directs our attention particularly to 11 U.S.C. § 109(a) ("[W]ho may be a debtor") which provides that only a person residing or having a domicile, a place of business, or property in "the United States" can file a bankruptcy petition. Since this provision is cited in connection with plaintiff's assumption that American Samoa is outside the judicial jurisdiction of the United States, it does not advance the inquiry. If this section and the aforementioned definition of "the United States" were the only provisions bearing on bankruptcy petitions in American Samoa, it would seem that residents of the Territory could file such petitions.[7] Even more

---

[7] Counsel for plaintiff has provided the court with a copy of an order in an unreported Hawaii bankruptcy case which relies on the section providing "who may be a debtor," among other authorities, for the proposition that "the United States bankruptcy system has never been applied in American Samoa." In re Kava Bowl, Case No. 84-00083, United States Bankruptcy Court for the District of Hawaii. The court's principal reliance, however, was on the failure of Congress to provide any forum in American Samoa for bankruptcy petitions. In any case, the Hawaii bankruptcy court was faced only with the question whether a resident of American Samoa with no substantial assets or business contacts with Hawaii could file a bankruptcy action in Hawaii. The Kava Bowl opinion did not to purport to decide the question before us; in context it is clear that when the court spoke of the "bankruptcy system" not being "applied in American Samoa" it was referring only to "who may be a debtor" and not to any other

importantly, the statute neither expresses nor implies that the places in which one must live or work in order to be a debtor are the only places in which the automatic stay applies.

Bankruptcy is generally not available to residents of American Samoa, not because of the sections cited by plaintiff but because there is generally no court in which residents may file their petitions. 28 U.S.C. § 1472 provides that such petitions must be filed in "the bankruptcy court for a district . . . in which the domicile, residence, principal place of business in the United States, or principal assets in the United States" is located. Since there is neither a bankruptcy court located here nor any provision designating American Samoa as part of any district with a bankruptcy court, there exists no court with jurisdiction to entertain a bankruptcy action when the debtor's residence, domicile, principal place of business, and principal assets are in American Samoa.

It does not follow, however, that a bankruptcy court which has acquired jurisdiction over a debtor may not issue orders concerning the debtor's property, and with his legal rights and obligations generally, that are binding in American Samoa. For the reasons we have given in our discussion of "the judicial jurisdiction of the United States," it is clear that Congress has the power to prescribe that an extraterritorial court has the power to issue orders that are binding in the Territory. The question, therefore, is one of legislative intent: whether Congress intended to give bankruptcy courts the power to enjoin[8] actions in the High Court of

---

direct or indirect effect the bankruptcy laws might have. For the reasons given in the text of this opinion, our decision in this case is fully consistent with the holding in the Kava Bowl case.

[8] The automatic stay differs from an injunction in that it becomes effective without an order of the bankruptcy court. The court retains, however, the power to dissolve or modify the stay, and it is in all other respects identical to an injunction or temporary restraining order. See 11 U.S.C. § 362(d)&(e).

American Samoa or, more likely, whether Congress would have so intended if it had adverted to the question. While the unavailability of a forum for entertaining bankruptcy petitions is one piece of evidence that might bear on that question, it is not the only evidence or the most important.

The best evidence of what Congress intended is what it enacted. 11 U.S.C. § 362 provides that a stay is "applicable to all entities" and that it precludes the commencement or continuation of "a judicial, administrative, or other action or proceeding against the debtor." The provision contains no limitations. That the stay is effective not only against proceedings in other bankruptcy courts but against all proceedings--- including proceedings in state courts, which even more clearly than the High Court of American Samoa are not federal courts and have nothing to do with bankruptcy --- is made clear not only by the list of carefully circumscribed exceptions that follow the general statement that proceedings against the debtor are automatically stayed, but also by a legislative history which is even more emphatic than the language of the law itself. The report of the House Judiciary Committee accompanying 11 U.S.C. § 362(a) stated that

> the scope of this paragraph is broad. All proceedings are stayed . . . . Proceedings in this sense encompasses civil actions as well, and all proceedings even if they are not before governmental tribunals."

H. Rep. No. 95-595 accompanying H.R. 8200, 95th Cong., 1st Sess. (1977) p. 340, reproduced in 11 U.S.C.S. at p. 25 (emphasis added). This language seems to have been designed to make it absolutely certain that no judge in any "judicial, administrative, or other proceeding" involving a bankruptcy debtor would read it as saying anything but "This Means You."

The committee report also makes it clear why Congress wished to stop all proceedings against bankruptcy debtors as soon as the petition was filed:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection

efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. . . . Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally.

Id. To imply an exception for proceedings in the High Court of American Samoa would, with respect to debtors who are subject to the jurisdiction of a bankruptcy court but who are for any reason amenable to process in American Samoa, defeat the purpose of the law we are asked to construe. It would mean that such debtors were given no "breathing spell" and that all their creditors were not treated equally.

The absence of a forum for bankruptcy actions in American Samoa may have been accidental or it may have been the result of a conscious legislative policy choice.[9] In either case it is an

---

[9] Conditions in American Samoa differ from those in the United States proper in a number of ways that might justify a deliberate decision not to create a bankruptcy remedy here. Very few people earn a substantial enough income to make it worth their while to pay the attorneys' fees and administrative costs necessary to shield future income from creditors. Those who do have substantial income frequently have sufficient contacts with Hawaii or some other jurisdiction to avail themselves of the bankruptcy remedy in that jurisdiction. Moreover, the territorial legislature has created other remedies which serve many of the purposes of "consumer" bankruptcies. The principal asset owned by most Samoans is land, and a statute provides that the land of a Samoan is not subject to execution other than to satisfy a mortgage on the land. A.S.C.A. § 43.1528. See also A.S.C.A. § 43.1501 (judgment debtor may apply for an order in which "the court shall allow the debtor to retain such property and such

insufficient reason for implying an exception to the stay of "all proceedings" involving a debtor who is the subject of a bankruptcy action in a court that does have jurisdiction.

The one case cited by plaintiff for the proposition that the bankruptcy stay does not apply in American Samoa illustrates instead the appropriateness of construing 11 U.S.C. § 362 to stay any proceedings which Congress would have the power to regulate. In re Fotochrome, Inc., 377 F. Supp. 26 (E.D.N.Y. 1974), aff'd sub nom. Fotochrome, Inc., v. Copal Co., Ltd., 477 F.2d 512 (2d Cir. 1975), held a bankruptcy stay inapplicable to an arbitration proceeding in Japan. The decision dealt primarily with the effects of two treaties requiring the United States to give binding effect to Japanese arbitral awards. Insofar as it had anything to do with the construction of 11 U.S.C. § 362, however, it held the stay provision inapplicable "outside the territorial limits of the United States" not as a matter of statutory construction but for reasons of constitutional and international law: in "extranational matters" a United States court has no power over persons and tribunals who do not have "minimum contacts" with the forum. 377 F. Supp. at 29. The bankruptcy stay provision does not apply to Japanese tribunals, in other words, because Congress has no power to make it apply to such tribunals.

-------

portion of his income as may be necessary to provide the reasonable living requirements of the debtor and his dependents"); A.S.C.A. § 27.1501 (limiting sales of goods on credit). On the other side of the ledger, the introduction of federal bankruptcy petitions in the Territory would entail a costly and complicated set of administrative institutions and procedures, and would be further complicated by the widespread belief that the introduction of a federal district court in the Territory would lead to the erosion of traditional institutions. While these factors are highly relevant to the question whether the remedy of a bankruptcy petition should be available in American Samoa, they have little or nothing to do with the question whether a stay or an injunction incident to a bankruptcy proceeding in another jurisdiction is or ought to be effective in the Territory.

The _Fotochrome_ court expressly "recognize[d] that this result might somewhat disturb the draftsmen of the Bankruptcy Act. Upon a petition for bankruptcy they would have expected the court to summon all the creditors of the bankrupt to press their claims at one time and place." _Id._ at 31. Since Congress has no power to make rules that bind Japanese courts, a creditor who sues an American bankrupt in Japan must be accorded an advantage over other creditors even though this is clearly contrary to the central purpose of the bankruptcy law. Since Congress does have the power to bind the High Court of American Samoa, no such advantage need be afforded a creditor who sues an American bankrupt in American Samoa. Rather, the language and purpose of the statute prevail.

### IV. Fairness

The short answer to the contention that it is "inherently unfair" to "require plaintiff to go to Hawaii" is that bankruptcy is unfair. Viewed from the perspective of a creditor, the whole point of the bankruptcy laws is to deprive one of what was formerly one's due. The need to file papers in a distant forum is irritating, but not nearly so irritating as the strong possibility that one will not recover at all. Neither of these burdens falls uniquely on plaintiffs who live in Samoa. If S & S has any creditors in Maine or in Puerto Rico the bankruptcy law clearly requires them to litigate their claims in Hawaii alongside those of Southwest Marine, at even greater expense and inconvenience. The unfairness, if any, is built into the statute and the remedy must be legislative rather than judicial.

One could argue that it is especially unfair to force a creditor to participate in his debtor's bankruptcy proceeding when the creditor himself would be ineligible for bankruptcy in the event he became insolvent. This unfairness may or may not be mitigated by the alternative remedies available in American Samoa; in any case, it is an insufficient reason for us to give the statute a construction that seems contrary to its language and purpose. The stay provision itself, however, provides that a stay may be terminated or modified "for cause" by the bankruptcy court. 11 U.S.C. § 362(d). If Southwest Marine can convince the Hawaii bankruptcy court that the equities require litigation in the High Court of American Samoa to be exempt from the stay, we will be willing and able to proceed.

## Order

The motion for reconsideration is denied. All further proceedings are stayed.